[No. 8870. Department Two. May 26, 1910.]

WALLACE A. BUSSELL, *Petitioner*, v. HIRAM C. GILL, *as Mayor of Seattle, Respondent.*[1]

MUNICIPAL CORPORATIONS—SPECIAL CHARTERS—LOCAL SELF-GOVERN-MENT—PUBLIC PLANS COMMISSION—VALIDITY—MEMBERSHIP. The amendment to the city charter of Seattle creating a municipal plans commission, does not violate Const., art. 11, § 10, guaranteeing local self-government, in that part of the members of the commission are to be appointed by associations, clubs, and public service corporations some of which are nonresidents of the state and of the United States; since the commissioners are all required to be citizens of the city, and are appointive, not elective, officers, with only advisory powers, whose plans are to be submitted to a vote of the people, and no legislative authority is delegated to it.

SAME—APPROVAL OF VOUCHERS—TAX. Such amendment is not objectionable by reason of conferring authority upon the commission to approve vouchers for all expenditures incurred, and requiring the comptroller to issue warrants to be paid out of the municipal plans commission fund, raised by a tax levy therefor.

SAME—SPECIAL PRIVILEGES—CONSTITUTIONAL LAW. Such amendment does not violate Const., art. 1, § 12, providing that no law shall grant special privileges to any citizen or class of citizens, in that certain designated associations and corporations are granted the privilege of participating in the selection of the commission; since the right simply of recommendation is not such a right or privilege as comes within the prohibition of the constitution.

Certiorari to review a judgment of the superior court for King county, Frater, J., entered May 3, 1910, dismissing an action for an injunction, after sustaining a demurrer to the complaint. Affirmed.

*Milo A. Root*, for petitioner, contended, *inter alia*, that a taxpayer may maintain this action. *Times Pub. Co. v. Everett*, 9 Wash. 518, 37 Pac. 695, 43 Am. St. 865; *Mazet v. Pittsburg*, 137 Pa. St. 548, 20 Atl. 693; *Jones v. Reed*, 3 Wash. 57, 27 Pac. 1067; *Crampton v. Zabriskie*, 101 U. S. 601; *Krieschel v. Board of Com'rs*, 12 Wash. 428, 41 Pac.

[1]Reported in 108 Pac. 1080.

186.   The amendment permits nonresidents of the city, state
and nation to have a voice in the selection of city officers of
Seattle, and is void as destructive of the principle of local
self-government.   28 Cyc. 121; 20 Am. & Eng. Ency. Law
(2d ed.), p. 1042, 1142, 1217; Cooley, Const. Lim. (6th ed.),
248; Dillon, Mun. Corp. (4th ed.), 96, 357; Horr & B.
Mun. Ordinances, 10, 11; McQuillan, Municipal Ordinances,
128; *Blair v. City of Wasco*, 75 Fed. 800, and cases cited;
*In re Wilson*, 32 Minn. 145, 19 N. W. 723; *Chicago v.
Trotter*, 136 Ill. 430, 26 N. E. 359; *St. Louis v. Russell*,
116 Mo. 248, 22 S. W. 470, 20 L. R. A. 721; *Gulf etc. R.
Co. v. Riordon* (Tex. Civ. App.), 22 S. W. 519; *Matthews
v. Alexandria*, 68 Mo. 115, 30 Am. Rep. 776; *Birdsall v.
Clark*, 73 N. Y. 73, 29 Am. Rep. 105, and note thereto.   A
city cannot surrender nor delegate its powers to others in
whole or in part.   4 Supplement Am. & Eng. Ency. Law
(2d ed.), p. 95, note 8; *Gossler v. Georgetown*, 6 Wheat.
593; *Valparaiso v. Gardner*, 97 Ind. 1; *Attorney General v.
Lowell*, 67 N. H. 198, 38 Atl. 270; *Carlyle Water, L. & P.
Co. v. Carlyle*, 31 Ill. App. 325; *Vandalia R. Co. v. State
ex rel. South Bend*, 166 Ind. 219, 76 N. E. 980, 117 Am. St.
370; *Montgomery v. Capital City Water Co.*, 92 Ala. 361;
*State ex rel. McClellan v. Graves*, 19 Md. 351; *Gale v. Kala-
mazoo*, 23 Mich. 344; *Mayor etc. of Baltimore v. Flack*, 104
Md. 107, 64 Atl. 702, 709; *Mayor etc. of New York v.
Second Avenue R. Co.*, 32 N. Y. 261; *Waterbury & Co. v.
Laredo*, 68 Tex. 565; *National Water Works Co. v. City of
Kansas*, 20 Mo. App. 237-242.   The amendment vests the
commission with legislative functions.   *In re Cloherty*, 2
Wash. 137, 27 Pac. 1064; *Benton v. Seattle Elec. Co.*, 50
Wash. 156, 96 Pac. 1033.   The power to make contracts and
perform other municipal business resides with the city council
unless expressly lodged elsewhere.   28 Cyc. 316, 636, 643;
Cooley, Const. Lim., chapter 8; *Blair v. City of Wasco*, 75
Fed. 800, and cases cited; *Semmes v. Mayor etc. of Columbus*,
19 Ga. 471; *Mayor etc. of Baltimore v. Poultney & Trimble*,

25 Md. 18; *Central Bridge Corp. v. Lowell*, 15 Gray (Mass.) 106; *State ex rel. Jordan v. Haynes*, 72 Mo. 377; *Schumm v. Seymour*, 24 N. J. Eq. 143; *Moore v. Mayor etc. of New York*, 73 N. Y. 238, 29 Am. Rep. 134; *Dey v. Mayor etc. of Jersey City*, 19 N. J. Eq. 412; *Richards v. Clarksburg*, 30 W. Va. 491. The amendment is a plain abridgment of the right guaranteed to a voter by the state constitution. Const., art. 6, §§ 1, 6; Cooley, Const. Lim. (6th ed.), 756, 758, 775.

*Scott Calhoun, Stephen V. Carey, Kerr & McCord*, and *Walker & Munn*, for respondent.

CROW, J.—This is an original proceeding, instituted in this court by petition, for a writ of certiorari to review the final judgment of the superior court of King county, entered in an action commenced by Wallace Adam Bussell, against Hiram C. Gill, as mayor of the city of Seattle, to enjoin him from appointing members of the Municipal Plans Commission. The trial court sustained a demurrer to the complaint, and the cause was dismissed.

The complaint attacks the validity of article 25, an amendment to the city charter, adopted March 8, 1910, creating a Municipal Plans Commission, which article, omitting immaterial sections, reads as follows:

"Section 1. That there be and hereby is created a commission to be known as a Municipal Plans Commission, which shall consist of twenty-one members. It shall be the duty of said commission to procure plans for the arrangement of the city with a view to such expansion as may meet probable future demands. These plans shall take into consideration the extension of the city and city works into adjacent territory; improvement and changes in public utilities and lines of transportation by surface, underground and water; the location, widths and grades of arterial highways necessary for the best treatment of the city, the development of the water front with its sea wall and wharves, the location of public buildings municipal decorations, and such further extensions of and additions to the park and boulevard system

of the city as it may, in conjunction with the Park Board, find advisable.

"Section 2. The members of such commission shall be citizens of the city of Seattle and shall be chosen in the following manner, to wit: Three shall be elected from the city council by its members; one shall be elected from the Board of Public Works by its members; in the same way one member shall be elected from the King county commissioners; one from the Seattle Board of Education and one from the Seattle Park Commission. The other members shall be appointed by the mayor in the following manner, to wit: Each organization hereinafter named shall nominate two of its members and the mayor shall appoint one of the two so nominated. The interests representing the water front owners, steam railway companies, street railway companies, and marine transportation companies shall organize, respectively, by mass meetings, at which a chairman and secretary shall be elected, and such official shall certify to the mayor the two names elected at such meetings. The call for such meetings shall be given publicity in the press of the city.

The Pacific Northwest Society of Civil Engineers.

The Washington State Chapter of American Institute of Architects.

The Seattle Chamber of Commerce.

The Seattle Commercial Club.

The Manufacturers' Association.

The Central Labor Council.

The Seattle Clearing House Association.

The Seattle Bar Association.

The Seattle Real Estate Association.

The Carpenters' Union.

The Water Front Owners.

The Steam Railway Companies.

The Marine Transportation Companies.

The Street Railway Companies.

In case of failure of any of said organizations or interests to nominate, then these members are to be appointed by the mayor, and each shall be chosen for his known qualifications with respect to the interests which shall have failed to certify its nominations.

"Section 7. There shall be furnished to said commission suitable quarters for the carrying on of its investigations, together with such engineering and clerical assistance as

may be necessary, and the commission shall, as soon as practicable after its organization, employ one or more, but in no case to exceed three, men of national reputation recognized as authorities in city planning to prepare a comprehensive plan under its direction and subject to its approval and adoption, embracing in its scope the entire area of the city, and such contiguous territory, as is comprehended in section one (1) of this resolution. The final plans shall be submitted to the commission for approval, and shall be regarded as approved, unless rejected by a two-thirds vote of said commissioners within thirty (30) days after the same shall have been filed with the commission. The Municipal Plans Commission shall hold regular meetings; at least one such meeting every two weeks. Upon the conclusion of the sittings of said commission, it shall submit its findings in full to the mayor and the city council of Seattle in printed form, together with plans. Said report shall be presented to the mayor and city council not later than September 30, 1911, and they shall cause the recommendations of the commission to be submitted to the people at the next general or special city election.

"Section 8. That if a majority of the voters voting thereon shall favor the adoption of said city plan so reported, it shall be adopted and shall be the plan to be followed by all city officials in the growth, evolution and development of said city of Seattle, until modified, or amended at some subsequent election.

"Section 9. There is hereby created a fund to be known as Municipal Plans Commission Fund, which shall consist of a tax levy to be made during the year 1910 as other taxes are levied, of one-fourth (¼) of a mill on the dollar, but no other or further levy or payment into said fund shall ever be made. The Municipal Plans Commission shall have exclusive power to pay out moneys from such fund for any and all purposes specified in section one (1) hereof, and shall, on or before the 10th day of August of the year 1910, prepare and submit to the city council for approval and adoption, an estimate of the amount of money which may be required for its purposes, in conformity with chapter 138 of the Laws of the State of Washington, Session 1909.

"Section 10. All expenditures on account of work done shall be made upon vouchers approved by a majority vote of

the Municipal Plans Commission and signed by its president and secretary. Each voucher shall, when accompanied by a detailed statement of such expenditures, be certified to the city comptroller, who shall issue a warrant therefor to the city treasurer, and the same shall be paid by the treasurer out of any money in the Municipal Plans Commission Fund not otherwise appropriated. Said commission may anticipate the revenues to be paid into said fund under the tax levy herein provided for by the issuance of its warrants against said fund to provide money for the necessary expenses of said commission prior to the availability of the funds to be raised by such levy. No expense against such fund shall be incurred after September 30, 1911, nor in excess of the levy provided, and any surplus remaining in said fund after said date, not lawfully appropriated or obligated for, shall be by ordinance transferred into the general fund."

Fourteen different organizations mentioned in the charter amendment are each authorized to nominate two persons as eligibles for appointment on the commission. The complaint alleged that the membership of these several organizations includes persons who are nonresidents of the state of Washington and of the United States, and the appellant now contends that, as the charter amendment in effect permits nonresidents to participate in the municipal affairs of the city of Seattle, by exercising the high privilege of choosing persons to be selected as public officers, it is necessarily void. The constitution of this state, art. 11, section 10, provides that:

"Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state."

The object of this constitutional provision was to secure to all such cities complete local self-government in municipal affairs, subject only to the restrictions mentioned, and charter provisions adopted under the authority so conferred should not be held invalid, unless it appears that they are in direct conflict with the constitution or laws of the state.

In *Hilzinger v. Gillman*, 56 Wash. 228, 105 Pac. 471, this court said:

"Both the constitution and the general law recognize that large, growing cities should be empowered to determine for themselves, and in their own way, the many important and complex questions of local policy which arise, and it is only when some act in the execution of that policy conflicts with the general law or contravenes the constitution, that the act can be questioned."

The city of Seattle framed its charter, and the amendment now under consideration was adopted, by proper procedure and vote. It expressly directs that all members of the Municipal Plans Commission shall be citizens of the city. It is therefore apparent that the various organizations mentioned cannot, if they would, by any nominations they may make, impose upon the mayor the duty or necessity of appointing nonresidents. Although nonresident members of the several organizations may have a voice in nominating two candidates as eligibles for appointment, we fail to see how, in the absence of an express constitutional inhibition, that fact invalidates the charter amendment. The commissioners thus selected will be appointive, not elective officers. No resident of Seattle is deprived of any of his rights as a citizen or elector. The people by their own vote have authorized this method of selection. The commissioners will be legally appointed officers, irrespective of the incidental fact that the number of eligible persons from whom the mayor may appoint them is restricted by the charter amendment. The commission will employ men of national reputation to prepare and submit final plans. It cannot originate plans. It can only reject those suggested by a two-thirds vote. The commission itself originated with the people, who adopted the charter amendment, and will cease to exist after September 30, 1911, no provision being made for its continuance. Plans for improvements and works can only be adopted by a vote of the people. No legislative power is delegated to the commission in violation of the constitution or any general

law.   The evident purpose of the amendment is to secure
experienced, capable and representative citizens to serve upon
the commission and select men of national reputation to
prepare and submit comprehensive plans.   The commissioners
from the various organizations must be appointed by the
mayor.   The commission will be an advisory body only.
Proposed plans are subject to a final vote of the people.   It
is therefore manifest that the authority conferred originates
with the people, and that the plans prepared and suggested
can  only be validated or adopted by them.   They have re-
served a supervisory control in themselves, and are deprived
of no constitutional right.   It is no concern of ours whether
the amendment has provided the best or wisest method for
selecting the commission.   It was adopted by the people under
the authority of the constitution.   The commissioners are not
vested with legislative powers.   They will make no levies of
taxes, and the advisory functions which they are to perform
do not conflict with any restrictions of the constitution or
laws of the state.   *Miller v. Louisville*, 30 Ky. Law 664, 99
S. W. 284.

Appellant further insists that the amendment is void be-
cause it confers authority upon the commissioners to ap-
prove vouchers for all expenditures incurred, and requires
the comptroller to issue warrants upon the city treasury for
the amount of such vouchers to be paid out of the Municipal
Plans Commission fund.   He insists that nonresidents, by
nominating eligibles for appointment, will have a voice in
the expenditure of the money raised by the tax authorized.
We find no merit in this contention.   The Municipal Plans
Commission will be composed of residents of the city.   Au-
thority to approve vouchers for expenditures is lawfully
conferred upon it.   In *State ex rel. Lowman & Hanford etc.
Printing Co. v. Riplinger*, 30 Wash. 281, 70 Pac. 748, this
court sustained a similar charter provision, which compelled
the comptroller of the city of Seattle to issue warrants upon
the city treasurer solely upon the certification of the library

board without any action of the city council. The rule there announced is controlling here.

Section 12, art. 1, of the state constitution, provides that:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

Appellant insists that the amendment under discussion violates this section, as it grants a privilege to each of the fourteen organizations mentioned, and to their members, which is not granted to the members of other similar organizations, such privilege being the right to participate in the selection of members of the commission. This contention cannot be sustained. In *State v. Vance*, 29 Wash. 435, 458, 70 Pac. 34, a similar attack was made upon the jury law of 1901, which authorized the bar of the county to nominate four electors, two of whom were to be appointed as jury commissioners by the superior court; but the validity of the act was sustained. While it is true that some argument was predicated upon the fact that the members of the bar are officers of the court, that argument was not necessary to the conclusion reached. Discussing the term "privileges and immunities," this court said:

"These terms, as they are used in the constitution of the United States, secure in each state to the citizens of all states the right to remove to and carry on business therein; the right, by usual modes, to acquire and hold property, and to protect and defend the same in the law; the rights to the usual remedies to collect debts, and to enforce other personal rights; and the right to be exempt, in property or persons, from taxes or burdens which the property or persons of citizens of some other state are exempt from. Cooley, Constitutional Limitations (6th ed.) 597. By analogy these words as used in the state constitution should receive a like definition and interpretation as that applied to them when interpreting the Federal constitution. The right simply of recommendation, which it might be said has been conferred by the act under consideration, and by the order of the court

made in accordance with the provisions of that act, is not, in its very nature, such a fundamental right of a citizen that it may be said to come within the prohibition of the constitution, or to have been had in mind by the framers of that organic law."

The demurrer to the complaint was properly sustained. The judgment is affirmed.

RUDKIN, C. J., DUNBAR, PARKER, and MOUNT, JJ., concur.