[No. 27790. Department Two. January 3, 1940.]

THE STATE OF WASHINGTON, *on the Relation of R. Cruik-shank et al., as County Commissioners of Thurston County, Respondents,* v. BUSH T. BAKER, *as County Auditor of Thurston County, Appellant.*[1]

[1]Reported in 97 P. (2d) 638.

*Wallace G. Mills,* for appellant.
*Smith Troy* and *H. C. Brodie,* for respondents.

JEFFERS, J.—This is an appeal by Bush T. Baker, as county auditor of Thurston county, defendant, from a judgment entered in the superior court for Thurston county, wherein the auditor was commanded to forthwith issue a warrant in the sum of $11.27, in favor of the Washington state association of county commissioners.

The cause came on for hearing before the court on the petition of relators and the answer of defendant, and after a full hearing, the trial court entered findings of fact, conclusions of law, and judgment. The findings of fact generally follow the allegations of the petition and are supported by the uncontroverted testimony of Charles Garber, a member of the board of county commissioners of Clark county and president of the Washington state association of county commissioners; Frank N. Palmer, one of the county commissioners of Thurston county and one of the relators; and Lew Selvidge, executive secretary of the association.

The Washington state association of county commissioners will hereinafter be referred to as the association.

The findings of fact, in so far as material to the questions raised, recite as follows: That, on June 26, 1939, relators, being the duly elected, qualified, and acting county commissioners of Thurston county, regularly adopted a resolution, wherein they designated the association as the coordinating agency in the execution of the duties imposed by Laws of 1939, chapter 188, p. 631, Rem. Rev. Stat. (Sup.), § 4077-2 *et seq.*, and authorized the reimbursement of the association by the county for the expense incident to such service; that the association rendered services and incurred expense for Thurston county subsequent to the taking effect of chapter 188, which expenditures and services were of substantial benefit and value to relators and Thurston county; that a voucher in proper form was duly and regularly presented to relators for expenses incurred by the association and for services performed from June 7 to June 30, 1939, in the sum of $11.27, which voucher was duly and regularly approved and ordered paid by relators August 31, 1939, and transmitted to defendant for the issuance of a warrant thereon; that defendant refused to issue a warrant on the voucher and so notified relators in writing, for the alleged reason that the attorney general had rendered an opinion that chapter 188, *supra,* was unconstitutional and void; that the association is an organization which has been functioning for many years for the purpose of coordinating county administrative programs, especially in the fields of highways and social security, and the association has incurred expense and rendered services which are, and have been, of real and substantial value to Thurston county and to all the counties in the state; that there is no other state

or private agency in the state rendering, or prepared to render, Thurston county or other counties coordinating services of the character and value of those furnished by the association; that the association is a voluntary organization, and all the thirty-nine counties and the 117 county commissioners thereof are members of such association; that no county or commissioner has any preference or advantage over any other county or commissioner in the management of the association; that Thurston county receives direct and specific benefits from the service of the association, and in addition receives, as do all other counties of the state, general benefits of great value.

Based upon the foregoing findings, the court concluded that chapter 188, *supra*, was a valid and lawful enactment of the legislature; that relators had lawfully availed themselves of the services offered under the act, had lawfully designated the association as a coordinating agency, and had lawfully agreed to reimburse the association for services and expenditures made for the benefit of Thurston county; that the claim of the association in the sum of $11.27 is a valid claim, and that the action of defendant in refusing to issue a warrant for such sum was unlawful; that relators were entitled to a peremptory writ of mandate compelling defendant to forthwith issue to the association a warrant in the above named amount. A peremptory writ of mandate was issued on September 14, 1939, and defendant has appealed from such judgment.

Appellant contends the court erred in issuing the peremptory writ.

■ The first question raised by appellant is whether or not the act violates the "equal privilege" clause of the state constitution. Appellant contends that it does, inasmuch as the act provides that county commissioners may contract with the association, the act naming

no other association, individual, or corporation with which the county commissioners may contract.

Section 1 of chapter 188, p. 631, provides:

"That the public necessity for the co-ordination of county administrative programs, especially in the fields of highways and social security, be and is hereby recognized." Rem. Rev. Stat. (Sup.), § 4077-2.

Section 2, p. 631:

"That it shall be the duty of County Commissioners to take such action as may by them be deemed necessary to effect co-ordination of such administrative programs, to prepare reports annually on the operations of all departments under their jurisdiction, and to submit biennially to the Governor and the State Legislature their joint recommendations on procedural changes which would increase the efficiency of any department." Rem. Rev. Stat. (Sup.), § 4077-3.

Section 3, p. 631:

"County Commissioners are hereby empowered to designate the Washington State Association of County Commissioners as a co-ordinating agency in the execution of duties imposed by this act and to reimburse said association from county current expense funds in the County Commissioners' budget for the costs of any such services rendered: *Provided,* Such reimbursement shall be paid only on vouchers submitted to the County Auditor and approved by the Board of County Commissioners in the manner provided for the disbursement of other current expense funds and such vouchers shall set forth the nature of the service rendered, supported by affidavit that the service has actually been performed: *Provided, further,* The total of such reimbursements from any county in any calendar year shall not exceed a sum equal to the revenues of one-one hundredth (.01) of a mill levy against the assessed valuation of said county." Rem. Rev. Stat. (Sup.), § 4077-4.

Section 4, p. 632, Rem. Rev. Stat. (Sup.), § 4077-5, provides that county commissioners are authorized to

take such other and further action as may be deemed necessary to the compliance with the intent of this act, including attendance at such state or district meetings as may be required to formulate the reports herein directed.

Article I, § 12, of the state constitution, provides:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

Appellant concedes that the act does not force the different boards of county commissioners to employ the services of the association, but he contends that, by designating the association as the only one with which the several boards of county commissioners may contract, it has the effect of giving an exclusive right to the association to engage in the business of being a clearing house for county information. Appellant cites no authority to support his contention that the act contravenes the section of the constitution above referred to, and we think none can be found.

In discussing Art. I, § 12, in its application to the jury act of 1901, in so far as such act gives to members of the bar of a county the right to recommend four eligible persons from the bar, from which the court shall select two to act as jury commissioners, this court, in the case of *State v. Vance*, 29 Wash. 435, 70 Pac. 34, stated:

"The privileges and immunities therein referred to pertain alone to those fundamental rights which belong to the citizens of the state by reason of such citizenship. These terms, as they are used in the constitution of the United States, secure in each state to the citizens of all states the right to remove to and carry on business therein; the right, by usual modes, to acquire and hold property, and to protect and defend the same in the law; the rights to the usual remedies to

collect debts, and to enforce other personal rights; and the right to be exempt, in property or persons, from taxes or burdens which the property or persons of citizens of some other state are exempt from. Cooley, Constitutional Limitations (6th ed.) 597. By analogy these words as used in the state constitution should receive a like definition and interpretation as that applied to them when interpreting the federal constitution. The right simply of recommendation, which it might be said has been conferred by the act under consideration, and by the order of the court made in accordance with the provisions of that act, is not, in its very nature, such a fundamental right of a citizen that it may be said to come within the prohibition of the constitution, or to have been had in mind by the framers of that organic law. A statute can be declared unconstitutional only where specific restrictions upon the power of the legislature can be pointed out, and the case shown to come within them, and not upon any general theory that the statute conflicts with a spirit supposed to pervade the constitution, but not expressed in words."

See, also, *Bussell v. Gill*, 58 Wash. 468, 108 Pac. 1080, 137 Am. St. 1070.

The act in question permits the county commissioners of the several counties to designate the association as a coordinating agency; it does not compel them so to do. Nor do we think it attempts to limit the county commissioners to employment of the association alone. It simply gives to the commissioners the right to employ the association, if they deem it necessary in an endeavor to carry out the programs mentioned in the act. It does appear from the testimony herein, that this association is the only organization at present in a position to furnish the information and render the services which seem to be required by the act, in order to coordinate a state-wide county administrative program. We are clearly of the opinion that the act in

question in no way contravenes either the letter or spirit of Art. I, § 12, of the state constitution.

■ It is next contended that the act violates Art. XI, § 8, of the state constitution, which provides:

"The legislature shall fix the compensation by salaries of all county officers . . . The salary of any county, city, town, or municipal officers shall not be increased or diminished after his election or during his term of office . . . ;"

and that it also contravenes the twelfth amendment to the state constitution, which provides:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners . . . , and shall prescribe their duties . . ."

Appellant contends hereunder that each board of county commissioners is responsible only for the proper administration of the affairs of its own county; also, that the act would allow the county commissioners of each county to employ the services of an organization of which each commissioner is a member, and to pay for these services. Apparently one of the contentions made by appellant under this heading is that the act in question would in some way increase the compensation of the commissioners. We are of the opinion this is not, and could not be, the effect of the act. No commissioner does or could receive anything for the services rendered by the association under the act. The association has a paid executive secretary, who compiles the data, and on demand furnishes it to the several counties, as and when they deem it necessary to have such information to carry out the programs specified in the act, and the commissioners pay the actual expense of such service.

■ We are familiar with the general rule that it is against public policy to allow officers of a county or

other municipal or quasi-municipal corporation to be interested, directly or indirectly, in any contract with the municipality of which they are officers, but in our opinion the act in question in no way conflicts with this rule.

We are also of the opinion that the legislature has the power to provide that the several counties, acting through their boards of county commissioners, assist in the coordination of certain administrative functions, as part of a state-wide program, and to provide for the payment of such services as the commissioners may deem necessary, within the limits set forth in the act, to carry out this program. The act in question recognizes the public necessity of coordinating certain administrative functions of the several counties, for the benefit of the individual counties and the state generally.

"Our constitution makes no special reference to county organizations as such other than to recognize them as legal subdivisions of the state, recognizing those counties existing at the time of the adoption of the constitution and providing for the organization of new counties by the legislature under certain restrictions. As local subdivisions of the state, counties are created by the sovereign power of the state of its own sovereign will without any necessary particular solicitation, consent or concurrent action by the people who inhabit them. They are created by the state under its sovereign and paramount authority with a view to the policy of the state at large, for political organization, and the administration of governmental affairs. With scarcely an exception, all the powers and functions of county organizations have a direct and exclusive reference to the general policy of the state and are, in fact, but a branch of the general administration of that policy. . . . This being so, it would seem to follow as a natural sequence that legislative authority over counties is unlimited except as that limitation is found in the state constitution." *State*

*ex rel. Board of County Commissioners v. Clausen*, 95 Wash. 214, 163 Pac. 744.

The legislature, having the powers above specified, and having recognized in the act in question the public necessity of coordinating certain county administrative programs, especially in the field of highways and social security, had the power to authorize the county commissioners of the several counties to take such action as by them deemed necessary to carry out this state-wide program, where such program would be of benefit not only to the individual county, but to the state at large; to authorize such commissioners to designate the association as a coordinating agency in carrying out the duties imposed by the act; and to authorize the levy of a tax to pay for such services.

For a general discussion of the rights of the state to impose upon counties and cities certain functions of general benefit to the state at large, as well as to the individual municipality to be taxed, see *State ex rel. Board of County Commissioners v. Clausen, supra,* and cases therein cited.

For the reasons assigned, the judgment is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and STEINERT, JJ., concur.