[No. 25103. Department One. June 12, 1934.]

THE STATE OF WASHINGTON, *on the Relation of Harry B. Miller, Appellant*, v. THE CITY OF TACOMA *et al., Respondents.*[1]

*John E. Belcher*, for appellant.

*W. W. Mount, John E. Gallagher*, and *Bartlett Rummel*, for respondents.

STEINERT, J.—This is an action in mandamus to compel the reinstatement of a discharged member of the

[1]Reported in 33 P. (2d) 88.

police force of the city of Tacoma, and to recover payment of his salary during the period of his separation from office. An alternative writ having first issued, a trial was had before the court, pursuant to which a judgment was entered quashing and dissolving the alternative writ and dismissing the action. An appeal was taken by the relator, Miller.

No testimony was taken at the trial. The facts are established by stipulations founded upon the pleadings and several affidavits, and are as follows: Tacoma is a city of the first class, and has a commission form of government. There are five executive and administrative departments, each having a commissioner at its head. The department of public safety has two lesser divisions denominated "police department" and "fire department," respectively. Respondent H. D. Dyment is the commissioner of public safety having supervision over the police department; respondent M. D. Guy is chief of police, and is the head of the police division under the department of public safety. The respondent civil service commission is composed of three members.

The relator entered the police division of the department of public safety as a patrolman in September, 1916, and was subsequently promoted to the rank of detective, which position he held until March 18, 1932. On the latter date, he was discharged from his position upon the order of respondent Dyment, commissioner of public safety, who thereupon gave notice in writing of such discharge to the civil service commission. The discharge was based upon alleged violations of paragraphs 6 and 12, § 49, of the civil service rules, both of which relate to offensive conduct of an officer. On the day following, namely, March 19, 1932, respondent Guy, the chief of police, gave relator written notice of his discharge, assigning as grounds therefor relator's

violation of paragraphs 6 and 12 of § 49 above referred to.

On March 22, 1932, relator, through his attorneys, demanded a hearing before the civil service commission; at the same time, he demanded that the chief of police furnish him with a bill of particulars, or more specific statement, as to the matters and things charged against him. The demand for hearing was granted; the demand for a bill of particulars was denied. A hearing was had before the civil service commission on March 28, 1932, at which relator appeared by counsel. At the conclusion of the hearing, the commission rendered its written decision in an order reciting that, after investigating the matter and after giving full consideration to the testimony presented at the trial, it found that the charges were sustained.

In July, 1932, relator petitioned the commission for a rehearing; the petition was denied. In July, 1933, he petitioned for reinstatement. To this petition, the commission replied that, under the civil service rules, it was necessary that relator get the signed endorsement of the head of the department before his request could be considered. Nothing further appears to have been done until February, 1934, when this mandamus action was brought.

The only question raised by the pleadings, or which appears to have been presented to the court, is whether, under the proceedings taken, as above outlined, the relator was legally discharged. The relator contends that the attempted discharge was made by the chief of police, but that, under the civil service rules, that officer did not have such authority; that the relator could be discharged only by the commissioner of public safety, acting in accordance with certain rules to be hereinafter referred to, and that this was not done. The respondents contend, and the court found, that

the relator was discharged under the authority of the commissioner of public safety, and that the act of the chief of police was but a notification to relator of such discharge, which, even if in some respects irregular, did not invalidate the order made by the commissioner.

Section 96 of the Tacoma city charter provides:

"No employee in the classified service shall be removed or discharged except for cause, and whenever any such employee shall have been removed or discharged, the head of the department, board or office in which he was employed, shall within three days furnish to him a statement in writing setting forth the reasons therefor and file a copy thereof with the commission."

In the recent case of *Larson v. Civil Service Commission*, 175 Wash. 687, 28 P. (2d) 289, involving a charter provision substantially the same as the one here, it was held that the term "head of the department" refers to the *commissioner* having supervision and administration of the particular executive and administrative department, and not to the head of a subdivision of such department, such as chief of the fire department or chief of police. Under the authority of that case, therefore, the power to discharge the relator rested with the commissioner of public safety only, and not with the chief of police. With the law thus definitely settled, the only question remaining is whether the discharge of the relator was effected by the commissioner rather than by the chief of police. It will be kept in mind that this is a mandamus action, and not one of certiorari to review the proceedings of the civil service commission. Under the record before us, and as found by the court, the order of discharge was, in fact, made by the commissioner, who filed a copy of that order with the civil service commission.

The charter provision requires that, when an employee shall have been discharged, the commissioner

shall furnish the employee with a statement, in writing, setting forth the reasons therefor, and file a copy thereof with the civil service commission. It will be observed that it is not required that the statement be *signed* by the commissioner, but merely that it be furnished by him. It will also be remembered that, although the chief of police is not the "head" of the department of public safety, he is the head of a division of that department.

The object and purpose of the written statement is to notify the employee of his discharge and the reasons therefor. The notification which the relator actually received fully accomplished that object and purpose. The fact that it was signed by the chief of police, rather than by the commissioner, we regard as immaterial. The notice was official, and came from the department in which relator was serving. The relator himself apparently considered it a notification from the proper source, for, as already stated, he requested that it be made more specific.

Further, in response thereto, relator promptly made application to the civil service commission for a hearing, the very procedure which he would have followed had the notification been signed by the commissioner. His application was granted, and a hearing, at which relator appeared, was had. At that hearing, testimony was adduced and full consideration given thereto. Whether the hearing before the commission was, in any respect, irregular or invalid, we are not advised, because, as already stated, the proceedings before the civil service commission were not certified to the court. We must therefore assume that they were, in fact and in law, regular and valid.

The point made by relator has reference to form rather than to substance. The method adopted by the department in furnishing relator with written notice

694

did not affect the jurisdiction of the civil service commission to proceed with the hearing which relator himself requested, nor did it in any way affect his substantial rights.

The judgment is affirmed.

MITCHELL, MAIN, MILLARD, and BLAKE, JJ., concur.