[No. 36255. Department Two. March 21, 1963.]

THE STATE OF WASHINGTON, on the Relation of Marie K. West, Respondent, v. THE CITY OF SEATTLE et al., Appellants.*

A. C. Van Soelen and Jerry F. King, for appellants.

Gerald D. Hile, for respondent.

DONWORTH, J.—This is an appeal by the city of Seattle and its Civil Service Commission from the judgment and decree of the superior court in a proceeding instituted by respondent, an employee in the classified civil service, who was discharged effective as of January 4, 1955, from her position as Clerk II in the lighting department, to obtain a court review of the validity of her removal from the city's employ. The trial court ordered respondent's reinstatement to her position.

This controversy has been in litigation for more than 8 years. The responsibility for this unreasonable delay is

*Reported in 379 P. (2d) 925.

a matter of dispute between counsel, but, regardless of the cause, the effect upon the litigants is most regrettable.[1]

The essential facts giving rise to this dispute may be stated as follows:

January 10, 1955—A report of separation from service (dated January 5) which stated the reasons for respondent's dismissal from employment was filed with the Civil Service Commission. It was signed in typewriting "Paul J. Raver, Supt. ss/D. E. Forsander (Appointing Officer)" and stated:

"M K West has been discharged for 'disregarding the warning by the Supervisor to discontinue the practice of coming to work obviously under the influence of intoxicating liquor. For frequent unexplained absences from office during working hours; often being equal to nearly half the total working time. Poor work with many mistakes, requiring much time by other personnel, to find and correct. Very uncooperative with other personnel, and sullen and unsociable when corrected. It is my opinion this employee was treated with more consideration than deserved.', and for the good of the service."

Dr. Raver was (and still is) the superintendent of lighting and has authority under the city charter to appoint and discharge employees of the department of lighting, subject to the provisions of the city charter relating to the classified civil service.

January 11, 1955 — Respondent made written demand upon the Civil Service Commission for an investigation as to the reasons for her dismissal.

February 17 to April 1, 1955—Three hearings were held by the commission. Appellant was present at these hearings and was represented by counsel.

---

[1]Shortly after this cause was argued in this court, respondent moved to quash a supersedeas order and bond which was filed in the superior court about a month after the judgment appealed from was entered. In support of this motion, respondent filed in this court her affidavit stating, *inter alia,* that the city's appeal was frivolous and taken for the purpose of delay only. She stated further that in her position as Clerk II she had been earning $3,360 per annum. She prayed that this court award her "damages suffered by her by virtue of this appeal by said city." This motion was heard by this court on October 19, 1962, and was denied.

April 7, 1955—Minutes of the commission contain the following:

" 'The Commission finds that Paul J. Raver, Superintendent of Lighting, through his authorized representative, had grounds and evidence upon which he based his dismissal of' Marie K. West, and the Commission finds that there is no proof that the Superintendent acted in an arbitrary or capricious manner in so doing.' "

June 6, 1955—Respondent applied to the superior court for a writ of certiorari to review the commission's findings. In her application, she alleged that:

"The findings of Civil Service Commission set forth above was patently in error, under all the evidence taken before said Civil Service Commission in said investigation, in that:

"(1) Article XVI, Sec. 12, and Article VII, Sec. 8, of said Charter only authorized the removal of affiant by Paul J. Raver, Superintendent of Lighting, the appointing power, who personally did not remove her, nor authorize her specific removal; and

"(2) Article XVI, Sec. 12, of the said Charter did not authorize the said appointing power, Paul J. Raver to delegate the power of removal of affiant to any person whomsoever, nor did any other provision of the Charter authorize the said appointing power to delegate such power of removal; and

"(3) The said removal of affiant was not in compliance with Article XVI, Sec. 12 of said Charter in that the said notice of dismissal of affiant purported to be effective on January 3, 1955, was not filed with the Civil Service Commission of Seattle until January 10, 1955, by the Lighting Department of the City of Seattle, and was not filed by the said Paul J. Raver, the appointing power; and

"(4) Each of the reasons for the dismissal of affiant filed by said lighting department with said Civil Service Commission were each legally insufficient cause for dismissal of affiant under said Charter and under the Civil Service Rules purportedly adopted pursuant thereto, with reference to dismissals of civil service employees; and

"(5) The issues before said Civil Service Commission were

"(a) Whether each of the reasons for the dismissal of affiant were legally sufficient for such purpose,

"(b) Whether her dismissal had been by the appointing power of the said lighting department,

"(c) Whether the reasons for said dismissal were timely filed with the said Civil Service Commission by the said department of lighting as required by the said charter,

"(d) Whether the said lighting department proved, by competent and substantial evidence before said Civil Service Commission any of said charges set forth in said reasons for the dismissal of affiant, and

"(e) The issues set forth in the said findings of said Civil Service Commission were not the only issues before said commission, and

"(6) The said findings of the said Civil Service Commission are erroneous and wholly insufficient in law to sustain said dismissal of affiant under all the evidence presented to said Civil Service Commission."

Appellants demurred to respondent's application for certiorari.

September 16, 1955—After argument, the demurrer was sustained and, upon respondent's refusal to plead further, her application for certiorari was dismissed. She then appealed to this court.

April 11, 1957—This court rendered its decision holding that Rule 1 of the Civil Service Commission, purporting to authorize the superintendent to delegate the power of removal, was null and void, and reversed the trial court's judgment of dismissal (50 Wn. (2d) 94, 309 P. (2d) 751). Concerning the problem now before us, we said:

"The demurrer should have been overruled. *It is suggested that, after the abortive dismissal by a subordinate, the superintendent himself dismissed appellant.* But that does not appear upon the face of the appellant's affidavit and cannot be considered. The answer must be served with the demurrer and a defendant may not answer after the demurrer is overruled. *State ex rel. Brown v. Warnock,* 12 Wn. (2d) 478, 122 P. (2d) 472. Because of the unusual situation here presented, however, leave is granted the respondent, if it is so advised, to answer." (Italics ours.)

August 13, 1957—Appellants filed their answer in the superior court. Besides certain denials, the answer contained two affirmative defenses:

I. "That said Marie K. West was removed as of January 1, 1955 by the Superintendent of Lighting, the appointing officer, and a statement in writing of the reasons therefor was filed with the Civil Service Commission; which removal the Superintendent of Lighting thereafter personally approved and ratified and such approval and ratification was testified to before the Civil Service Commission on April 1, 1955 by said Superintendent of Lighting."

II. This affirmative defense consisted of a transcript of the proceedings before the Civil Service Commission in its investigation of respondent's dismissal.

March 17, 1961—Respondent filed her reply denying the allegations contained in the first affirmative defense and admitting those contained in the second affirmative defense.

July 28, 1961—After hearing the cause, the superior court entered its judgment and decree in which it declared that respondent's purported dismissal was illegal and void, as were also the written findings of the Civil Service Commission purporting to sustain her dismissal. The court further

"ORDERED, ADJUDGED AND DECREED that respondents shall forthwith cause the relator Marie K. West to be immediately reinstated and reemployed as a Clerk II in the classified civil service of the city of Seattle, Washington, or the legal equivalent thereof, such reinstatement and reemployment to be effective as of the start of the working day in said department of lighting on January 4, 1955, with all of the rights, privileges, benefits and civil service credits then and thereafter appertaining thereto from and after said date and with the same effect as if relator had never ceased her said employment with said department of lighting and without prejudice of any kind or character to relator by virtue of her said void dismissal and said investigation by, and said void findings of, said Civil Service Commission and the proceedings in this court."

The case is now before us for a second time, the city and its Civil Service Commission having appealed from the superior court's judgment and decree.

In their brief, appellants state that, as appears from the trial court's oral opinion, its disposition of the case was based solely upon its finding of fact that respondent's dis-

missal was not by Paul J. Raver, Superintendent of Lighting, and upon the court's conclusion that for that reason the dismissal was void. The vital issue on this appeal is the same issue which we held could not be considered on the first appeal because the city's demurrer did not reach it.

We accept appellants' statement of the issue as being correct and, therefore, find it necessary only to consider and decide that question.

The findings of fact of the trial court which relate to the question before us are No. 8 and No. 9, which read as follows:

"The findings of Civil Service Commission set forth above were in error, under all the evidence taken, and exhibits before said Civil Service Commission in said investigation, in that:

"(1) Article XVI, Sec. 12, and Article VII, Sec. 8, of said Charter only authorized the dismissal of relator Marie K. West by Paul J. Raver, the said Superintendent of Lighting, the appointing power, who personally did not dismiss or discharge her, nor authorize her specific dismissal or discharge and said relator was in fact discharged by subordinates of Paul J. Raver without his prior knowledge, without his prior approval of relator's discharge; and

"(2) Article XVI, Sec. 12, of the said Charter did not authorize the said appointing power, Paul J. Raver, to delegate the power to discharge relator to any person whomsoever, nor did any other provision of the Charter authorize the said appointing power to delegate such power of removal; and

"(3) The said discharge of relator was not in compliance with Article XVI, Sec. 12 of said Charter in that the said dismissal of relator purported to be effective on January 3, 1955, but said written report and reasons assigned for such was not filed with the Civil Service Commission of Seattle until January 10, 1955, by the Lighting Department of the city of Seattle, and was not signed or filed by the said Paul J. Raver, the appointing power and he had no knowledge of said dismissal at the time of the said filing of said written report and the reasons assigned for relator's dismissal were not his reasons. [Finding No. 8.]

"That the said Paul J. Raver did not exercise his personal judgment or discretion in any way in connection with the purported dismissal of relator; nor was there any approval

by him of such purported dismissal of relator prior thereto; nor did he, by any overt act or word, make such purported dismissal his act or deed; and the testimony of the said Paul J. Raver at the said investigation before the Civil Service Commission was not an approval, or purported ratification, of the purported dismissal of relator. [Finding No. 9]"

Appellants have assigned error to these two findings as well as to the two conclusions of law based thereon.

The two findings quoted above are fully supported by the testimony of Dr. Raver, the Superintendent of Lighting (the appointing power), who was called as a witness by the Civil Service Commission on its own motion on April 1, 1955. Dr. Raver first identified a letter which he had written to the commission dated March 4, 1955 (which was 2 months after respondent's discharge) and testified that the facts stated therein were true and correct. The letter (omitting formal parts) is quoted in the margin.[2]

On cross-examination by respondent's counsel, Dr. Raver testified:

"Q. Doctor, calling your attention to the exhibit which has been admitted in this proceeding, which purports to be

[2]"This is to confirm the authority I have given to Messrs. Ira L. Cottom, Assistant Superintendent, and Donald E. Forsander, Personnel Officer, to handle personnel matters.

"Shortly after I became Superintendent of Lighting on January 15, 1954, Messrs. Cottom and Forsander met with me in my office to acquaint me with existing personnel practices of the department and to obtain my direction as to the continuance thereof or any change which I desired be made. They particularly brought to my attention the matter of reporting appointments, separations, leaves, dismissals, and disciplinary action involving suspensions, which I was told had been done for the Superintendent by the Personnel Officer, involving his signing these reports under the Superintendent's name as appointing officer. I was shown the department's current file of such reports.

"At this meeting I verbally directed that the practice of Mr. Donald E. Forsander as Personnel Officer signing under my name as appointing officer all reports to the Civil Service Commission of appointments, separations, leaves, dismissals, and disciplinary action involving suspensions be continued. I further stipulated that the department file of these reports should be checked periodically by Assistant Superintendent Cottom, who is Mr. Forsander's immediate superior, and that any cases involving dismissal, disciplinary or other unusual action, be brought to Mr. Cottom's attention before the report thereon is transmitted to the Civil Service Commission."

a dismissal of Marie K. West, I will ask you, sir, did you yourself have anything at all personally to do with that dismissal, with passing on it in any way? A. No, sir. Q. You considered it in no respect? A. No, sir. I am speaking about that particular document. Q. Yes. I am talking about that and the dismissal of Marie K. West. Did you have anything at all to do with the dismissal of Marie K. West as such? Mr. Wilson: I submit, if the Commission please, that the document speaks for itself. He asked if he had anything to do with it. It appears on the face of it that he did the work, or did accomplish the act by his duly designated agent. The Chairman: Repeat your question, please, Mr. Hile. Q. My question, Doctor, is whether or not you specifically exercised your own judgment as to whether or not Marie K. West should or should not be dismissed. A. No. Mr. Wilson: That wasn't the question before. Q. Did you have anything at all to do with her dismissal personally? A. No, sir."

Following this testimony, the chairman of the commission questioned Dr. Raver as follows:

"Q. Are you familiar with this case of Marie K. West? Have you familiarized yourself since the discharge of this woman? A. Yes, I have discussed it with my staff. Q. When you say you have discussed it with your staff, who do you mean? A. Mr. Cottom and Mr. Forsander, the Director of Personnel, those two. There may have been others in the discussion. Q. I don't hear you. A. Those are the principal two. There may have been others in the discussion. Q. Is it your present opinion that the action of your staff in discharging this lady was proper? A. Yes, sir."

Thereupon respondent's counsel resumed his cross-examination of the witness:

"Q. Did you talk to Mrs. West about that matter at all? A. No, sir. Q. Did you review the record? A. No, sir. Q. It was just a matter of discussion? A. Yes, sir. Q. Have you reviewed any of the evidence adduced in this case? A. No, sir. Q. Your opinion, as you have expressed it, has been formed by talking to the gentlemen to whom you referred? A. That is correct. . . . Q. (By Mr. Hile) When did this discussion you mentioned occur? Was it very recently, Doctor? A. Yes. Q. It would be after the date of this exhibit, which is marked Exhibit 5? A. No. It was before that date. Q. One day? A. I really don't remember

the date. I could check up on the records, probably, and determine, but I am not sure whether it was before that date or not. Q. It would be right around that date somewhere close, wouldn't it? A. Yes."

We have quoted all of Dr. Raver's testimony because (as found by the trial court) he admittedly knew nothing of respondent's dismissal as an employee of his department or the reasons therefor until months after the event. Therefore, he could not have exercised any discretion or power of discharge vested in him by the city charter.

Appellants contend that, by his testimony on April 1, 1955, Dr. Raver ratified and adopted the acts of Mr. Forsander, who purportedly signed on his behalf the report of separation of respondent filed with the commission January 10, 1955. In support of this contention, appellants rely on *State ex rel. Miller v. Tacoma*, 177 Wash. 689, 33 P. (2d) 88 (1934).

In that case, this court had occasion to interpret the provisions of the Tacoma city charter relating to dismissal of employees, which provided, in substance, that the head of a department in which an employee was employed should, within 3 days, furnish to the employee a statement, in writing, setting forth the reasons for the dismissal, and file a copy with the Civil Service Commission.

A discharged member of the Tacoma police force instituted an action in mandamus to compel his reinstatement. The head of the department was the commissioner of public safety, who had supervision of both the police department and the fire department. The statement of the reasons for the policeman's discharge was signed by the chief of police and not by the commissioner of public safety. This court held that the applicable charter provision had been complied with because it did not require that the statement be *signed* by the commissioner of public safety but merely that it be furnished by him to the discharged employee. In holding that the procedure in the *Miller* case was proper, we said:

"The object and purpose of the written statement is to notify the employee of his discharge and the reasons there-

for. The notification which the relator actually received fully accomplished that object and purpose. . . ."

■ We think that the provision of the Seattle city charter relating to dismissal of employees is materially different. It reads:

"Any officer or employee whose appointment is complete *may be removed by the appointing power only* upon the filing with the commission of a statement in writing of the reasons therefor. . . ." (Italics ours.)

In the early case of *Easson v. Seattle*, 32 Wash. 405, 73 Pac. 496 (1903), this court construed this provision to mean that only the appointing power (in this case Dr. Raver) had authority to discharge a civil service employee and that the Civil Service Commission had no authority to do so. We further held in that case that the fact that the chief of police (who was the appointing power) acquiesced in the employee's removal by the Civil Service Commission did not constitute a removal by the appointing power. Hence we affirmed the trial court's judgment that the employee should be reinstated to his office in the police department. Regarding the alleged acquiescence by the appointing power, we said:

"The chief of police, who alone had the power to remove respondent, did not remove him, but declined to do so after investigating the matter. The civil service commission declared that he was removed by its action. The chief of police acquiesced in the action of the commission to the extent of not assigning respondent to duty, but he did not remove him."

The holding in the *Easson* case has never been overruled or modified, and we are of the opinion that our interpretation of Art. XVI, § 12, of the city charter in that case was correct and should be applied to the facts as found by the trial court in the case at bar.

Appellants argue that, since the department of lighting has nearly 2,500 employees, it is impractical, if not impossible, for the head of the department to personally investigate and state in writing the reasons for the removal of a particular employee from his position. The answer is that for more than 60 years the city charter has imposed that

duty upon the appointing power only (the head of the department) and has consequently afforded the civil service employee the assurance that he cannot be deprived of his employment unless and until the appointing power has exercised his personal judgment as to whether he should be discharged and, if so, has filed with the commission a statement in writing of his reasons therefor. If this procedure imposes an undue burden upon the appointing power, the remedy is to amend the pertinent provisions of the city charter accordingly.

The judgment of the trial court is supported by the findings of fact which, in turn, are supported by substantial evidence (principally by the above-quoted testimony of Dr. Raver). Its judgment and decree is hereby affirmed.

One further matter should be noticed. The effect of the trial court's judgment and decree is to order respondent reinstated in her position as Clerk II under the classified civil service as of January 4, 1955. This reinstatement entitles respondent to the pay which she would have received if she had continued in the employ of the lighting department since that date *less* such sums as she may have earned elsewhere during this period.

In the event that the parties are unable to agree upon the precise amount which respondent is entitled to recover, the trial court is authorized to hear such evidence as either party may produce bearing upon this issue of fact and enter judgment in her favor for such sum as the court shall find to be correct.[3]

It is so ordered.

OTT, C. J., FINLEY, HUNTER, and HAMILTON, JJ., concur.

---

[3]In appellants' brief it is argued, in effect, that an additional reason for denying reinstatement is that sound public policy should not permit an absent signature to result in the recovery of several thousand dollars in back pay by the discharged employee.

It seems to us that the necessity for litigating this entire matter could have been eliminated if the appointing power had (shortly after respondent's purported removal) signed and filed with the commission a new statement in writing of his reasons for her removal. Having elected, instead, to stand on the original statement and his ratification thereof, appellants must accept the consequences.