## Schwartz Case.

Argued September 15, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Matthew W. Bullock, Jr.,* First Deputy City Solicitor, with him *Levy Anderson,* City Solicitor, for City of Philadelphia, appellant.

*Jerome J. Shestack,* with him *Peter S. Greenberg,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MONTGOMERY, J., March 23, 1971:

The history of this case dates from June 8, 1963, when the appellee, Donald Schwartz, then occupying the position of Property Assessment Aide (Real) in the office of the Board of Revision of Taxes, took a civil service examination for promotion to the position of Real Property Assessor I. Having been certified as successfully passing the examination, his name was placed on the list of persons awaiting promotion for that position.

Later, on April 15, 1964, Louis Singer, a fellow employee who had taken the same examination at the

same time, complained to the Personnel Director, under whose supervision the examination had been given, that he had seen Schwartz cheating during the examination by copying answers from the paper of the man who had sat in front of him at that time. As a result of that complaint and pursuant to Civil Service Regulation No. 9.163, the Personnel Director commenced an investigation which involved taking testimony, granting Schwartz a hearing, and affording him an opportunity to take a re-examination. Schwartz rejected the offer of a re-examination, and sought an injunction to prevent the Personnel Director from taking this action, which effort was ultimately nullified by our Supreme Court. *Schwartz v. Tate,* 419 Pa. 593, 215 A. 2d 616 (1966). On March 3, 1966, the Personnel Director wrote a letter, quoted below,[1] which was forwarded to Schwartz, along with a three-page report of his investigation, containing, inter alia, the statement, "Under the circumstances, the similarity of the examination papers, along with the sworn statement of an eyewitness that he saw the actual cheating, compel the Per-

---

[1] Dear Mr. Schwartz: I regret to inform you that as a result of my investigation of the charges reported to me that you cheated on the civil service examination for Real Property Assessor I held on June 8, 1963, I find you guilty of such charges and that such violation was intentional. Accordingly, I am ordering your discharge from your position in the City service in accordance with Sections 9.1611 and 9.1621 of the Civil Service Regulations.

Please be informed that I am also notifying the City Controller, in writing, that he may not approve any pay voucher for your services after March 4, 1966. I am taking this latter action in accordance with Section 7-302(2) of the City Charter.

In accordance with Section 9.163 of the Civil Service Regulations I am attaching a statement of the reasons for my determination.

I should also tell you that if you so choose, you may appeal my decision to the Civil Service Commission, which appeal must be filed within 30 days of your receipt of this letter.

sonnel Director to conclude that the conscientious performance of his function requires that he find that Mr. Schwartz was guilty of the cheating on the civil service examination held on June 8, 1963. Such cheating by its very nature was willful. Under Sections 9.1611 and 9.1621 of the Civil Service Regulations, the Personnel Director has no alternative but to separate Mr. Schwartz from municipal service and to hold him ineligible therefrom for a period five years." Thereafter an appeal was taken by Schwartz from that action to the Civil Service Commission, which affirmed it. Schwartz appealed to the Common Pleas Court from that order of affirmance; and, as a result of same, Hon. Stanley GREENBERG, Judge, ordered and directed that the Civil Service Commission ". . . hold a new hearing on petitioner's appeal to the Commission from his dismissal as a City employee." No reason appears in the record for this action.

Following a complete rehearing the Commission again affirmed the dismissal and Schwartz again appealed to the Court of Common Pleas, which, again acting through Judge GREENBERG, reversed and ordered Schwartz reinstated as of the date of his dismissal, with back pay and all rights and privileges pertaining to his employment. This action of the court below was based on the record as presented to it on appeal, without additional evidence; and the sole reason assigned by it in support of such action was that the Personnel Director lacked authority to dismiss Schwartz, since the appointing authority was the Board of Revision of Taxes. In support thereof the court cited Sections 7-201[2] and 7-303[3] of the Philadelphia Home Rule Char-

---

[2] Section 7-201. Appeals. The Civil Service Commission shall hear and dispose of appeals as provided in this section. Any employee who is dismissed or demoted after completing his probationary period of service, or who is suspended for more than ten

ter. Neither the finding of the Personnel Director that Schwartz had cheated on the examination, nor the finding of the Commission that the Personnel Director had not abused his discretion in making that determination and dismissing Schwartz for that reason, were disturbed by the lower court. This appeal by the City followed.

The primary question, therefore, is whether the lower court, for the reason that the Personnel Director did not have the authority to dismiss Schwartz from

---

days in any one year, may, within thirty days after such dismissal, demotion or suspension, appeal to the Commission for review thereof. Every appeal shall be heard promptly. Upon such review, both the appealing employee and the appointing authority involved shall have the right to be heard publicly and to present evidence; but technical rules of evidence shall not apply. The findings and decision of the Commission shall be in writing and shall be certified to the Personnel Director.

If the Commission sustains the appeal on the ground that the action complained of was taken by the appointing authority for any political, religious or racial reason, or labor union activity lawful for municipal employees, it shall order the employee to be reinstated to his former position without loss of pay for the period of his suspension. In all other cases where the Commission sustains the appeal of the employee it shall order the reinstatement of the employee in his former position with or without loss of pay for the period of his suspension or direct that he be appointed to a position of equal status in the same office, department, board or commission with or without loss of pay for the period of his suspension. If the Commission overrules the appeal of the employee, it shall confirm the action of the appointing authority which shall be final as of the date it was taken.

Findings and decisions of the Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds.

[3] Section 7-303. Dismissal, Demotion and Suspension. Any dismissal or demotion after the completion of the required probationary period of service, or suspension of any employee in the civil service shall be for just cause only.

his position as Property Assessment Aide (Real) in the office of the Board of Tax Revision, erred in reversing the Board's action.

The lower court assumed and both parties agree that the Board of Revision of Taxes is Schwartz's appointing authority insofar as the applicable provisions of the Home Rule Charter are concerned. But based on that assumption, Schwartz argues that, since his appointing authority did not dismiss him, then no other authority, including the Personnel Director, has the power to do so.

We have no doubt that the argument advanced by Schwartz has considerable merit in the effectuation of the purposes of civil service commissions. Such systems usually have been established to separate the matters of determination of eligibility for appointment and appointment, itself, the former power being in the hands of a Personnel Director or similar officer and the latter power being exercised by the actual heads of departments or supervisors of the employees. Thus, ordinarily, the civil service commission, or personnel director, has no power to appoint to any position or office, the power to appoint being in the head of the department or office in which a position is listed under the Civil Service Act. 15 Am. Jur. 2d, Civil Service, §23. The power to appoint generally implies the power to dismiss. Since generally the power of dismissal of probationary civil service employees has been placed by statutes and rules in whole or in part in the appointing authority, the dismissal by an officer or other administrative agent who is not the appointing power is without authority. 15 Am. Jur. 2d, Civil Service, §35. It has been held that a charter provision vesting the removal power in the head of a department invalidates any rule attempting to delegate that power to some other officer. *The State of Washington, on the*

*Relation of Marie K. West v. The City of Seattle*, 61 Wash. 2d 658, 379 P. 2d 925 (1963).

However, there can be no question but that the basic matter involved in this case, cheating on civil service examination, is exclusively within the sphere of the Personnel Director's jurisdiction under the Home Rule Charter.

Under Art. VII of the Charter, a comprehensive plan of civil service is established placing in the Personnel Director plenary powers and responsibility for its administration subject to a review by an independent commission consisting of three members. Among those duties and responsibilities is that of maintaining a roster of all employees of the City with all pertinent data concerning them, of investigating the effectiveness of the civil service operations of the Charter and of reporting same to the Mayor and the Civil Service Commission. He is also directed to foster and develop programs for employee effectiveness and to prepare and rate tests for employees. The purpose of the Civil Service system is to establish a system of personnel administration based on merit principles and scientific methods governing the appointment, promotion, demotion, transfer, layoff, removal and discipline of City employees. Section 7-300.

Sections 7-400 and 401 provide for Civil Service Regulations to be prepared by the Personnel Director subject to approval by the Civil Service Commission and the Administrative Board in some instances; and it is specified that such regulations provide for, inter alia: "7-401(g) The rejection of candidates or eligibles who fail to comply with reasonable requirements in regard to such factors as age, physical condition, training and experience, or who have attempted any deception or fraud in connection with an examination."

Section 10-108 of the Home Rule Charter provides: "Unlawful Acts Pertaining to the Civil Service.

"(1) No person shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under the civil service regulations or in any manner commit or attempt to commit any fraud preventing the impartial execution of such regulations. . . .

"(4) Any person who violates any of the provisions of this section shall upon conviction, in addition to any penalties and punishment provided for hereafter, for a period of five years be ineligible for appointment to or employment in any position under the City."

The pertinent sections of the Civil Service Regulations subsequently adopted follow:

"9.161 PROHIBITED ACTS. No person shall: 9.1611 Make any false statement, certificate, mark or report with regard to any test nor in any manner commit or attempt to commit any fraud or deception preventing or tending to prevent the fair and impartial execution of this regulation governing examinations.

"9.162 PENALTIES. The penalty for any violation of any of the sections of this Regulation 9—Examinations shall be as follows: 9.1621 If the director determines the violation was intentional, the violator shall for five years be barred from competing in any Civil Service examination and shall for that period be ineligible for appointment to or employment in any position in the Civil Service and such violator shall be removed forthwith from any position he may hold in the Civil Service. 9.163 Any violation of the provisions of this Regulation 9—Examinations shall be promptly reported to the Director, who shall be responsible for conducting a thorough investigation. During the course of the investigation the accused shall be afforded the opportunity for a hearing before the Director who shall is-

sue a written determination as to whether the violation occurred, the nature thereof, and, if a culpable violation occurred, imposing the penalty, if any, he may decide to impose as provided by the Charter or these Regulations. There shall be no right to appeal from the determination of the Director other than such as may be expressly conferred by the Charter." By Charter Section 7-401(g) and the pertinent Civil Service Regulations, which to us appear to be reasonable and proper, the Personnel Director clearly has the power and the duty to reject any candidate who cheats on a civil service examination. Our examination of the Charter discloses no provision providing for a time limit on his actions. Thus, after appointment of an employee initially declared to be eligible by the Personnel Director and even after such employee's probationary period has passed, there appears to be no Charter provision preventing the Personnel Director from reviewing, nunc pro tunc, the qualifications, examination, and initial eligibility of City employees.

However, the power of the Personnel Director to determine the qualifications or eligible status of candidates for City employment does not extend to the question of their good behavior after appointment. In the cases relied on by Schwartz, employees were dismissed for behavior occurring after their appointment and not for behavior or qualifications affecting their eligibility for appointment. In *The State of Washington, on the Relation of Marie K. West v. The City of Seattle,* supra, where it was held that only the appointing authority could dismiss the employee, the employee had been dismissed for, inter alia, absenteeism, poor work, uncooperativeness, and unsociability. Likewise, in the case of *Walter L. Easson v. City of Seattle,* 32 Wash. 405, 73 P. 496 (1903), where it was held that only the appointing power must exercise his personal

discretion in discharging any employee, which cannot be exercised in merely acquiescing in the action of the Civil Service Commission, the conduct of the employee involved was maltreatment of persons by Easson, who was a police officer. These cases are therefore distinguishable from the present case, in which the conduct in question involves the initial qualifications for office.

We agree with Schwartz's contention that the Charter does not grant to the Personnel Director specific powers to dismiss an employee. It would seem that thereby all dismissal powers are reserved to the appointing authority by the Charter. However, the question of who actually dismissed Schwartz in this case or who has such power becomes academic in view of the Charter provision, Section 7-302(2)[4], which specifically grants to the Personnel Director the right to suspend payment of any employee who did not properly comply with the Civil Service Regulations in being appointed or employed. That section gives the Personnel Director the power to declare any person, which would include applicants and employees, ineligible for further service in the municipal government for failure to comply with the Regulations. It was precisely this section to which the Personnel Director referred in his letter to Schwartz dated March 3, 1966. Having invoked Section 7-302, which he had the power to do, the Personnel Director's further statement that he was dismissing Schwartz was superfluous. The fact remains, however, that under our interpretation of these Charter

---

[4] Section 7-302(2). *No officer or employee of the Auditing Department shall make or approve or take any part in making or approving any payment for personal services to any person holding a position in the civil service if the Personnel Director has given notice to the City Controller that such person was not appointed and employed in accordance with the civil service regulations.*

provisions, the Personnel Director has the plenary power to inquire into the fitness of City employees and, although wholly lacking in appointive or dismissal powers, he has the power to decide the question of eligibility even after appointment and to enforce his decisions under Section 7-302 of the Charter.

Although Schwartz argues lack of due process in these proceedings, particularly that he did not receive the necessary notice prescribed in §17.01 of the Civil Service Regulations, our interpretation of that provision leads us to the conclusion that such notice is required only in cases of disciplinary action initiated by the appointing authority. No such provision is found in Regulation 9.163 authorizing action by the Personnel Director for cheating on examinations. The course of this proceeding indicates otherwise that Schwartz has been given every opportunity to be heard, with full protection of his rights and with due process assured.

Finding no violation of due process or lack of jurisdiction, the order of the lower court is reversed, the appeal to that court is dismissed and the order of the Personnel Director as affirmed by the Civil Service Commission is now affirmed by this Court.

---

Dissenting Opinion by Hoffman, J.:

Judge Montgomery has ably detailed the factual situation involved in this case. He has concluded—correctly in my opinion—that the Philadelphia Home Rule Charter (Charter) does not give the Personnel Director the power to dismiss a City employee and that all dismissal powers are thereby reserved to the appointing authority.

Having reached this conclusion, Judge Montgomery then determines that the question of who actually dismissed appellee Schwartz, or whether Schwartz was in fact fired, is academic in light of Section 7-302(2) of the Charter. This section provides as follows: "No of-

ficer or employee of the Auditing Department shall make or approve or take any part in making or approving any payment for personal services to any person holding a position in the civil service if the Personnel Director has given notice to the City Controller that *such person was not appointed and employed in accordance with the civil service regulations."* (Emphasis added).

The majority concludes that this Section gives the Personnel Director power to inquire into the fitness of City employees for employment even after appointment. If such inquiry reveals that the employee did not comply with civil service regulations when he was "appointed and employed", the Personnel Director must so inform the City Controller and such employee will not be paid. I believe that this is a correct interpretation of the Charter, as long as the inquiry made by the Personnel Director is directed to an employee's fitness for the job in which he is employed. In this case, however, the Personnel Director invoked Section 7-302(2) as the reason for dismissing Schwartz from the position he held *before* he took the test on which he allegedly cheated. As was summarized in the majority opinion, Schwartz was employed as a *Property Assessment Aid (Real)*. He took the civil service examination for promotion to the position of *Real Property Assessor I,* but he was never employed in that capacity. The closest he came to such employment was to be placed on the list of eligible persons awaiting promotion to Real Property Assessor I.

If Schwartz had been guilty of any violation of civil service regulations that in any manner related to his employment as a Property Assessment Aid (Real), the Personnel Director would have been justified in invoking Section 7-302(2) and ordering that appellee not be paid. No such act has been alleged. In fact, no chal-

lenge has ever been made to Schwartz's qualifications for the position of Property Assessment Aid (Real). Nowhere has any assertion been advanced that there was any irregularity in Schwartz's appointment or employment as a Property Assessment Aid (Real). Further, neither the City Solicitor nor counsel for appellee relied on Section 7-302(2) as controlling or relevant to the issues presented on this appeal. I thus believe that Section 7-302(2) does not apply to the situation presented for decision here.

The majority's reasoning results in an anomalous situation: Schwartz is employed by the City, full time, as a Property Assessment Aid (Real). He may not be dismissed, yet he cannot be paid. I believe that such a result was never contemplated by the draftsmen of the Charter, nor was this contemplated by the Personnel Director in his letter to appellee dated March 3, 1966.[1]

As the majority recognizes, the civil service system established by the Charter gives the power to appoint

---

[1] It seems clear that the Personnel Director was attempting to dismiss Schwartz. In his letter of March 3, 1966, the Director informed appellee that appellee's discharge was being ordered "in accordance with Sections 9.1611 and 9.1621 of the Civil Service Regulations." The letter from the Personnel Director and the sections of the Civil Service Regulations just mentioned are printed in full in the majority opinion.

Since the Sections of the Civil Service Regulations (specifically 9.1621) provide for dismissal by the Personnel Director, they are obviously invalid under the majority's holding that the Charter does not grant to the Personnel Director the power to dismiss an employee.

Though the Personnel Director did invoke Section 7-302(2) to stop approval of pay vouchers for appellee's services, it is clear from the letter that this was done as part of the Personnel Director's attempt to dismiss appellee under Civil Service Regulation Section 9.1621. There is no indication that the Personnel Director contemplated a situation where appellee was a full-time employee, but would not be entitled to pay.

and dismiss employees to the various sections of the City government (appointing authorities). Though the appointing authorities may appoint and dismiss, the power to determine the qualifications of candidates is reserved to the Personnel Director. The Charter allows him to reject candidates who do not comply with civil service regulations. Section 7-401(g). The Personnel Director thus could have found that Schwartz cheated on the civil service test and was therefore not qualified to be hired as a Real Property Assessor I. In addition, if Schwartz had been hired as a Real Property Assessor I and if the Personnel Director had determined that Schwartz cheated on the examination, the Personnel Director is given the power under Section 7-302(2) to stop payment of Schwartz's salary. In that case, he would not have been "appointed and employed" in accordance with civil service regulations.[2]

The majority explicitly holds that the Personnel Director cannot dismiss an employee because this power is reserved to the appointing authority. The record reveals that the Board of Revision of Taxes, Schwartz's appointing authority, investigated the charges against Schwartz, found that they had no merit and refused to dismiss him. If Schwartz cheated on the civil service test, the Charter provides that only his appointing authority has the power to dismiss him. I can see no basis for allowing the Personnel Director to do indirectly what he cannot do directly. There is no indica-

---

[2] The Annotation to Section 7-302(2) sets forth the reason for the inclusion of this provision in the Charter.

"2. Non-payment of salaries to employees subject to civil service but not appointed and not employed in accordance with civil service regulations is one of the most effective means for enforcing the civil service provisions of this Charter and the civil service regulations. Officers and employees of the Auditing Department are therefore enjoined from approving payment of salaries to such persons upon notice from the Personnel Director."

tion in the Charter that the Personnel Director may use his Section 7-302(2) power when an employee is guilty of an act which would allow his appointing authority to dismiss him for just cause. Cf., Section 7-303.

This does not imply that the Personnel Director has no recourse in the event that he determines an employee has violated civil service regulations and should be dismissed. In the first instance, the Personnel Director should consult the appointing authority. If the appointing authority will not act, the Charter clearly provides a remedy. Section 10-108 sets forth unlawful acts pertaining to the civil service, which include cheating on civil service examinations.[3] Section 10-109 provides that a violation of Section 10-108 "shall be a misdemeanor, punishable by a fine of not more than three hundred dollars or by imprisonment for not more than ninety days, or both, and if the violator is an officer of employee of the City, by removal from office or immediate dismissal."

Thus, if the Personnel Director finds that an employee has violated a civil service regulation in a way that comes within the prohibitions of Section 10-108, he has the power to direct the City Solicitor to bring a criminal complaint and secure an employee's dismissal in that manner. *See,* Section 7-302(1).

---

[3] The relevant parts of Section 10-108 provide as follows:

"(1) No person shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under the civil service regulations or in any manner commit or attempt to commit any fraud preventing the impartial execution of such regulations.

. . . .

"(4) Any person who violates any of the provisions of this section shall upon conviction, in addition to any penalties and punishment provided for hereafter, for a period of five years be ineligible for appointment to or employment in any position under the City." Clearly, the word "conviction" refers to a misdemeanor conviction pursuant to Section 10-109, infra.

260

Therefore, I agree with the majority that the Personnel Director had no power to dismiss appellee Schwartz. However, I must dissent from the majority's holding that Section 7-302(2) gives the Personnel Director the power to cut off appellee's pay in the situation presented here.

I would therefore affirm the decision of the lower court ordering appellee's reinstatement.

JACOBS, J., joins in this dissenting opinion.