[No. 24316.   Department Two.   April 25, 1933.]

THE STATE OF WASHINGTON, *on the Relation of Walter A. Mattice, Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

*Revelle, Revelle & Kells,* for appellant.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondents.

STEINERT, J. — This is a mandamus proceeding brought to compel the issuance of certain city warrants in payment for overtime work alleged to have been performed by relator, Mattice, as a locomotive fireman under civil service. The cause was tried to the court and resulted in findings of fact, conclusions of law and judgment denying relief. Relator has appealed. He is hereinafter referred to as appellant.

In May, 1928, appellant became eligible, in the civil

[1]Reported in 21 P. (2d) 288.

service of the city of Seattle, to the position of "locomotive fireman." On May 10, 1928, the city light department requested certification of persons eligible to appointment to that position. Three names, including appellant's, were accordingly certified, and on May 23, 1928, one Walter L. Cothrell received the appointment, the record showing that appellant was at that time absent from the state.

By the ordinance creating the position of locomotive fireman, there was also created the position of "watchman (detail from laborer)" at a compensation of from $115 to $125 per month. On May 25, 1928, the civil service commission determined that the position designated as "watchman and locomotive watchman," appearing in the monthly estimates of the lighting department of the city, should be classified as "locomotive fireman," and the department was requested to call for certification for the filling of the vacancy under that classification.

Sometime prior to June 9, 1928, the general foreman of the Skagit power site had called for a fireman for the steam shovel and donkey engine being used on that project. On that day, which was subsequent to the order of classification made by the civil service commission on May 25, 1928, the lighting department made a request for supplemental certification. Thereupon, the civil service commission certified the appellant as the only person then eligible for appointment to that position. Pursuant to the certification, appellant was selected and appointed on July 8, 1928. For about nine months, that is, until April, 1929, appellant worked under this certification and appointment, firing the steam shovel and donkey engine, running the air compressor, and doing some other work. The events up to this point play no part in, and form no basis for,

the claim herein, and are recited merely as introductory to the situation here involved.

In April, 1929, the steam shovel work had been completed, and appellant was informed that he was to be laid off. There was then existing a "night work" job on the project, involving a generality of duties, such as cleaning the locomotive, keeping up sufficient steam to enable it to go out in the morning, answering telephone calls from Diablo Dam during certain hours, watching the camp at night, and calling the workmen, as well as guests, in the morning. This job had formerly been held by a laborer.

On being notified that he was about to be laid off, appellant requested that he be given the "night work," and asserted his right thereto. After some communication with his superior, the foreman, Mr. Currier, advised appellant that he could have the job. Appellant was told at the time, however, that the job required him to work a shift of ten hours per day, beginning at ten p. m. and ending at six a. m., at a fixed compensation of $6.25 per shift. Appellant immediately raised the question of overtime beyond eight hours, but was told by the bookkeeper that no overtime would be allowed. Three or four days later, after appellant had entered upon the job, he complained to the foreman regarding the matter of overtime, and in a somewhat heated argument was specifically told that the job was to be worked on "shift," that no overtime would be allowed, and that he would not be retained on any other basis. Although appellant was dissatisfied with the ultimatum thus presented to him, he nevertheless kept the job and discharged the duties incident thereto until January, 1932, when he was laid off entirely.

While still on the job, appellant on several occasions expressed his dissatisfaction regarding overtime work,

but his complaint was generally made in a somewhat informal manner. On December 30, 1930, upon written complaint of appellant to the superintendent of the lighting department, the time was reduced from ten hours to eight; the amount of work, however, remained the same as before. During all of this time, appellant regularly received his warrants, signed the payrolls in receipt thereof, and thereafter cashed the warrants, without protest. After his hours had been reduced, he continued to work until January, 1932, without making any further claim or protest regarding the past overtime. In February, 1932, which was about a month after the lay-off occurred, he began this action for claimed overtime between April 18, 1929, and December 31, 1930.

The assignments of error all relate to the findings made by the court and the refusal to grant appellant's motion for judgment. In their final analysis, they raise but one question, that is, whether appellant's status during the period in question was that of a locomotive fireman, entitling him to compensation as fixed by the ordinance, or whether he was merely an employe under a contract which, by its terms, fixed the rate of his compensation. The trial court adopted the latter view.

The appellant in his brief stresses and places great reliance upon the order of the civil service commission above referred to, made May 25, 1928, by which the position theretofore designated as "watchman and locomotive fireman" in the monthly estimates of the lighting department was classified as "locomotive fireman." His contention is that his certification and appointment was under the latter classification; that his employment continued under that classification to the end; and that, since the ordinance fixed the salary for that position at $6.25 per day upon an eight-hour basis,

he was therefore entitled to compensation for the estimated overtime.

It must be borne in mind that this compensation, so far as appellant's claim is concerned, does not relate to the time prior to April 18, 1929, during which appellant was actually holding the position of fireman on the steam shovel job. We are here concerned merely with the "night work" job held subsequent to that date.

■■■ Dealing directly with the specific contention, the answer thereto is that positions in the classified civil service are, by the charter of the city of Seattle, Art. IV, § 18, subsection 40, created by *ordinance and not otherwise*. In other words, the civil service commission has no power to, and may not, *create* positions, its authority being limited to the classification of positions with reference to examinations and to the certification, upon request, of the required number of persons eligible to fill a specified vacancy. The power to create the position is reserved in the city council; nor may this power, being legislative, be delegated. *State v. Scott*, 115 Wash. 124, 196 Pac. 576.

Turning to the ordinance itself, we find that it provides for but one position of "locomotive fireman (Skagit)." That position was held by Mr. Cothrell under the original certification and appointment. Appellant frankly admits that there is only one such position, and he does not contend that he was entitled to displace Mr. Cothrell. But he contends that there may be, and that in this instance there were, several *vacancies* or places of employment in the one position, and that his appointment was to fill one of such vacancies.

The argument is ingenious, but, in our opinion, it is not sound when we consider the provisions of the or-

dinance itself. In designating the various positions, wherever more than one employe is contemplated in the ordinance, not only is the particular title pluralized, but the number of men to be employed thereunder is indicated by a numeral in parenthesis immediately following the title, unless the number is indefinite. For instance, on the page of the ordinance including the position claimed to have been held by appellant, there appears the following: "electrical metermen (4)," "electrical metermen (7)," "fireman, locomotive (Skagit)," "conductor Skagit railroad," "engineer, locomotive (Skagit)," "machinists," "watchman (detail from laborer)," etc. It will be noted that "fireman" and "watchman" are in the singular, while the other titles are in the plural with the number of employees indicated, except in case of "machinists" wherein the number is indefinite. It seems to us too clear for argument that, under the ordinance, there was to be but one fireman on the locomotive and, likewise, but one watchman.

The ordinance further provides that, whenever a person holding a position in the service of the city is required to do overtime work, the head of the particular department may allow such person a leave of absence with pay for a period equal to the overtime employment. Persons who are compensated at a rate per day as fixed by the ordinance have the alternative of taking time and a half pay for overtime work, or else a leave of absence for an equivalent period of time, on pay at the regular rate. Persons who are employed simply on a monthly basis, however, do not have that alternative, but are limited to leave of absence on pay.

If, then, appellant was holding the position of watchman, under the ordinance, he has been fully compensated, since that position paid only $115 to $125 per

month; and, since he did not ask for leave of absence, he would not be entitled to overtime pay. On the other hand, if, as appellant strenuously contends, he came within the classification of "locomotive fireman," then he is met by the fact that there was no position beyond the one already filled by Mr. Cothrell, the regular fireman. He would, therefore, not be entitled to overtime on that basis.

That the appellant was in the employ of the city is, of course, admitted and true. His employment, however, during the time in question was purely upon a contractual basis and not within the classified civil service. The compensation therefor arose out of contract, and not by virtue of the ordinance. The fact that the compensation agreed upon was the same as that provided by the ordinance for a locomotive fireman is merely a coincidence and is immaterial. The rate of pay does not of itself establish the status.

The appellant, during the period here involved, was not a locomotive fireman doing extra and general work, as he had done prior to April 18, 1929, but, on the contrary, he was a general handy-man with various duties, one of which required him to keep up steam in the engine at night. Formerly, that is, prior to April 18, 1929, he had been a fireman engaged primarily in the operation of a steam shovel and, at times, a locomotive, with some general duties in addition; but latterly, that is, subsequent to the above mentioned date, he was an all-round handy-man, having among his many and varied duties the care of the locomotive while it was at rest in the shed at night. His employment and line of duties during the two periods were distinctly different.

Since the appellant was neither an officer nor an employe under the classified civil service, at the time, but merely working on a contractual basis, he is lim-

ited by its terms. Having performed the contract and having received all that the contract called for, he is not now entitled to recover anything in addition.

The judgment is affirmed.

BEALS, C. J., TOLMAN, BLAKE, and MAIN, JJ., concur.