[No. 4192–1.   Division One.   March 7, 1977.]

HOMES UNLIMITED, INC., ET AL, *Appellants,* v. THE CITY OF SEATTLE, *Respondent.*

48

*Olwell, Boyle & Hattrup, Lee Olwell, Goodin & Garvey, Paul A. Goodin,* and *Leo F. Garvey,* for appellants.

*John P. Harris, Corporation Counsel,* and *Lawrence K. McDonell, Assistant,* for respondent.

WILLIAMS, J.—This action was brought to test the constitutionality and validity of a Seattle ordinance regulating rental agencies. The trial court found the ordinance legal except for a surety bond provision. With one further exception, we affirm.

The rental agencies bringing the action are engaged in furnishing information of housing accommodations available for rent. They do not act as real estate brokers, and normally charge a fee in advance.

The ordinance makes it unlawful for a rental agency to:

(1) List or advertise any housing accommodation or otherwise offer or provide information about any housing accommodation without the prior written consent of the landlord.

(2) Refer any customer to or list any housing accommodation which is and has been unavailable for rent for the three (3) days immediately preceding the date of the referral.

(3) Use any contract or furnish any receipt to any customer or prospective customer which does not disclose in accordance with rules and regulations adopted by the Director all material information regarding the services to be provided by the rental agency to said customer.

(4) Require any customer to pay a fee or charge prior to such customer entering into a rental agreement or lease for a housing accommodation obtained from the rental agency.

(5) Publish or cause to be published any advertisement for a particular housing accommodation without including in the advertisement a page, line or other code number through which the particular housing accommodation can be easily located in the rental agency's listing records.

The effect of this ordinance is to put the complaining agencies out of business, or at least that is their contention and the trial court so found.

The reasonableness of the legislation is to be tested by these criteria:

1. It must be reasonably necessary in the interest of the public health, safety, morals, and the general welfare;

2. It must be substantially related to the evil sought to be cured;

3. The classes of businesses regulated must be reasonably related to the legitimate object of the legislation; and

4. Rates set must be reasonable and not unnecessarily prohibitory or confiscatory.

*Petstel, Inc. v. County of King,* 77 Wn.2d 144, 459 P.2d 937 (1969).

■■ Guiding rules are:

An ordinance regularly enacted is presumed constitutional, and the burden of establishing the invalidity of an ordinance rests heavily upon the party challenging its constitutionality. If a state of facts justifying an ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. *Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964) and cases cited therein.

*Spokane v. Carlson,* 73 Wn.2d 76, 80, 436 P.2d 454 (1968), and

Economic hardships often inevitably result from laws and ordinances enacted or adopted for the protection of the public health and welfare; this, however, cannot affect their constitutional validity unless they are shown to be clearly unreasonable and discriminatory.

*Sittner v. Seattle,* 62 Wn.2d 834, 839, 384 P.2d 859 (1963).

There was abundant evidence before the Seattle Council that rental agencies in the city engaged in deceptive and abusive practices, which evils should be cured. An example of the evidence is this report by the Public Safety and Health Committee of the council, which is quoted from one of the court's findings:

"1. Seattle consumers paid $344,867 to rental agencies in 1973 for help finding places to live. At an estimated average of $25 per contract, the number of contracts purchased in 1973 is estimated at 13,795.

"2. 50.7% (Or 733 out of a total of 1449) of the ads published by Rentex in the Homes for Rent classified ad columns of the *Seattle Times* between November 26 and December 23, 1973, were for property which was not available for rent on the day of publication and which Rentex, on the day of publication, knew was not available for rent.

"3. Rentex personnel failed to give correct information to 26 out of 35 persons (74.3%) who called during that time to ask about the availability of property already listed in Rentex's office records as unavailable.

"4. Rentex's methods of doing business is to publish classified ads, most of which when checked were false on the day of publication, to induce consumers to pay $30

apiece for access to a substantially different series of rental listings than consumers are led to believe are available by the published ads. Consumers interested in a specific property and careful enough to call before paying to determine whether the property was still available, stood about a 1 in 4 chance of getting correct information from Rentex, during the period of this study. Deception was not an accidental or incidental part of this business: It was the main method of doing business.

" . . .

"7. The experience with Rentex indicates that consumers cannot necessarily protect themselves by taking the precaution of asking about availability of specific listings, and may still pay a front end fee to get the location of a particular property only to learn that it is not available.

"8. Because of the numbers of people involved, the amount of money involved, the increasing disparity between supply and demand for rental housing in Seattle, and the substantial evidence of potential for deception and actual deception on the part of the largest rental agency in Seattle, there is an urgent need to protect Seattle consumers from deceptive and abusive practices of rental agencies."

The evidence before the council presents a state of facts portraying evils in the rental agency business which could "reasonably be conceived to exist." Accordingly, the council acted within its capacity in attacking the problem and designing a remedy.

For the most part, the provisions of the ordinance strike at a desired goal, *i.e.,* to insure that customers of rental agencies receive relatively accurate information of available housing. The steps taken to confine the information sold to *available* housing are proper, and the requirement that housing accommodations advertised be easily located in the agency's records is reasonable. The condition that the fee may be collected only upon the successful culmination of the customer's search for housing, however, is not.

The record contains no evidence that the sale of accurate information concerning available rental housing is not a legitimate business. The requirement that an agency must wait for payment until the service rendered has resulted in

the customer actually renting a housing accommodation bears no substantial relation to the evils sought to be cured. If the agency supplies accurate, up–to–date information concerning the type of housing sought, the service has been performed and the City should not interfere with the arrangements the agency and its customer have agreed upon for payment for those services.

■ Contrary to the complaining agencies' contention, the ordinance does not fail for lack of a severability clause. The rule is that

> if a portion of a statute is found to be invalid, the entire statute will not be struck down unless the invalid portion is unseverable and it cannot be reasonably believed that the legislature would have passed the one without the other, or unless the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purpose. *Boeing Co. v. State,* 74 Wn.2d 82, 442 P.2d 970 (1968); *Hogue v. Port of Seattle,* 54 Wn.2d 799, 341 P.2d 171 (1959).

*State ex rel. Distilled Spirits Institute, Inc. v. Kinnear,* 80 Wn.2d 175, 176–77, 492 P.2d 1012 (1972).

It is reasonable to believe that the council with the record before it would have passed an ordinance requiring that rental agencies sell only accurate information of available housing and that advertised information be easily located in the listing records.

■ Finally, we find no merit in the agencies' several assignments of error to the court's admission into evidence of material which was before the council when it enacted the ordinance. This evidence, including the report above quoted, was hearsay in character, but it was not admitted into evidence to prove the truth of the information recited. The duty of the court was to look at the material to see if the council's action was wholly unjustified or "if a state of facts justifying an ordinance can reasonably be conceived to exist." The evidence demonstrating this was before the council, which is not bound by the court's rules of evidence.

The judgment, except for the surety bond and prepayment provisions of the ordinance, is affirmed. No costs are allowed either party on appeal.

SWANSON and ANDERSEN, JJ., concur.

Petition for rehearing denied May 16, 1977.

Review granted by Supreme Court November 4, 1977.