[No. 7585-3-I.  Division One.  November 24, 1980.]

THE CITY OF SEATTLE, *Respondent,* v. AUTO SHEET METAL WORKERS LOCAL 387, ET AL, *Respondents,* INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 77, ET AL, *Appellants.*

*Hafer, Cassidy & Price, Thomas K. Cassidy,* and *Richard D. Eadie,* for appellants.

*Douglas N. Jewett, City Attorney, P. Stephen DiJulio, Assistant, Vance, Davies, Roberts, Reid & Anderson, Russell J. Reid, Pamela G. Bradburn, Slade Gorton, Attorney General,* and *Richard A. Heath, Assistant,* for respondents.

CALLOW, C.J.—Two of the 22 labor organizations who were parties in the trial court appeal the declaratory judgment entered by that court. The appeal involves the construction and constitutionality of Seattle's charter amendment No. 5, which requires the establishment of a city personnel system, and the 1978 City of Seattle Personnel Ordinance, which was enacted pursuant to charter amendment No. 5.

In 1967, the legislature passed the Public Employees' Collective Bargaining Act. Laws of 1967, 1st Ex. Sess., ch. 108, p. 1884 (codified at RCW 41.56). The act, which applies to counties, municipal corporations and certain political subdivisions of the state, protects the right of

public employees to organize and designate representatives of their own choosing for the purpose of collective bargaining. RCW 41.56.020; RCW 41.56.030(2); RCW 41.56.040. Public employers, in most instances, are required to engage in collective bargaining with the employees' exclusive bargaining representatives. RCW 41.56.100. A refusal to do so is an unfair labor practice. RCW 41.56.140. "Collective bargaining" includes the duty of the public employer and the exclusive bargaining representative to meet, confer and negotiate in good faith, and to execute a written agreement concerning "grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, . . ." RCW 41.56.030(4).

On November 8, 1977, the electorate of the City of Seattle passed charter amendment No. 5, which amended Seattle City Charter article 16 under which the City had operated a civil service system. Section 1 of the amendment states that a city personnel system shall be established "by ordinance," with the system to be administered by a personnel director. Section 1 further provides:

> The ordinance shall establish uniform procedures for recruitment, selection, development, and maintenance of an effective and responsible work force, including but not limited to, job advertising, training, job classification, examinations, appointments, transfers within the system, career development, salary administration, labor negotiations, safety, employee benefits, grievance procedures, discipline, discharge, layoff and recall, regulation of political activity, and other personnel matters.

Other sections of the amendment require that the personnel system be administered to assure nondiscrimination and to comply with merit principles set forth in the amendment. A civil service commission is established to hear appeals involving the administration of the personnel system, and a civil service appeals process is established.

Section 7 of the amendment provides in part that no member of the civil service may be suspended or dismissed except for justifiable cause. Section 9 provides:

LABOR NEGOTIATIONS: The right of city employees to bargain collectively, through representatives of their own choosing, shall not be abrogated by the city, but no collectively bargained contract shall become effective without ratification by the City Council. The City Council shall not ratify any contract which is inconsistent with this Charter.

Section 10 requires that the ordinance required by section 1 be enacted by November 8, 1978, and that the prior provisions of article 16 remain in effect until the ordinance required by section 1 takes effect.

On November 6, 1978, the Seattle City Council enacted ordinance No. 107790, the 1978 City of Seattle Personnel Ordinance. The mayor signed the ordinance on November 15, 1978. The ordinance, which is comprehensive and bears an effective date of January 1, 1979, provides for the creation of a personnel department to be headed by a director of personnel. Included within the director's duties is the establishment of many of the uniform procedures on personnel matters called for by section 1 of the charter amendment.

On the date of the ordinance's passage, the City brought a declaratory action to determine whether the City's civil service commission is similar in scope, structure and authority to the State Personnel Board established under RCW 41.06, in which case the City, under the proviso of RCW 41.56.100, would not be required to collectively bargain with respect to any matter delegated to the commission. Named as defendants were all labor organizations qualified and acting as exclusive bargaining representatives for city employees. The defendants counterclaimed for a declaration that the charter amendment and ordinance be declared invalid because of a claimed conflict with the Public Employees' Collective Bargaining Act, RCW 41.56. The defendants also raised the issues of the timeliness of

the ordinance's passage and the legality of delegating legislative powers to the director of personnel.

The trial court determined that the City's civil service commission is not similar in scope, structure and authority to the State Personnel Board. No appeal has been taken from this determination. The trial court further determined that the charter amendment and the ordinance are not in conflict with governing state law because the charter amendment does not remove or affect the City's duty to collectively bargain pursuant to the Public Employees' Collective Bargaining Act. The court upheld the City's delegation of authority to the director of personnel and concluded that the personnel ordinance was enacted in a timely and lawful manner.

The International Brotherhood of Electrical Workers Local 77 and the International Federation of Professional and Technical Engineers Association Local 17 appeal. The following three issues are dispositive of this appeal:

1. Do charter amendment No. 5 and the 1978 City of Seattle Personnel Ordinance irreconcilably conflict with the Public Employees' Collective Bargaining Act so as to render them unconstitutional and void pursuant to Const. art. 11, § 10 (amendment 40)?

2. Does the 1978 City of Seattle Personnel Ordinance unconstitutionally delegate to the personnel director legislative authority over matters that section 1 of charter amendment No. 5 directs be established by ordinance?

3. Is the 1978 City of Seattle Personnel Ordinance invalid because it was not passed within the time limit set for its passage by charter amendment No. 5?

The first issue raised is whether charter amendment No. 5 and the 1978 personnel ordinance irreconcilably conflict with the Public Employees' Collective Bargaining Act so as to render them unconstitutional and void pursuant to Const. art. 11, § 10 (amendment 40). The defendants contend that the trial court erred in declaring charter amendment No. 5 constitutional since its requirement of uniform

procedures on personnel matters irreconcilably conflicts with the requirement of RCW 41.56 that the City collectively bargain on personnel matters. The conflict is irreconcilable, they argue, due to the requirement of charter amendment No. 5, section 9 that the city council not ratify any contract inconsistent with the charter. The 1978 personnel ordinance is argued to be derivatively invalid.

The City argues in response that the mention in section 1 of certain working conditions and personnel matters does not mean that the charter displaces the right to negotiate those items. Rather, it argues, section 9 explicitly recognizes the right of collective bargaining, as does section 6, which provides that no person may appeal to the civil service commission if the subject of the appeal was the subject of binding arbitration under a labor contract. Section 1's requirement of uniform procedures on labor negotiations is also pointed to as being inconsistent with any possible intent of the amendment to establish uniform practices for all personnel.

The parties agree that the provisions of RCW 41.56 apply to the City. They also agree that where there is a conflict between a general law enacted by the legislature and a freehold charter provision, the general law is superior to and supersedes the charter provision. Const. art. 11, § 10 (amendment 40); *State ex rel. Guthrie v. Richland,* 80 Wn.2d 382, 494 P.2d 990 (1972); *Seattle v. Wright,* 72 Wn.2d 556, 433 P.2d 906 (1967); *State ex rel. Lynch v. Fairley,* 76 Wash. 332, 136 P. 374 (1913).

██ In determining whether a conflict exists between RCW 41.56 and charter amendment No. 5, it is necessary to first ascertain precisely those matters upon which the City must collectively bargain. As now defined, and as first defined in 1967, Laws of 1967, 1st Ex. Sess., ch. 108, § 3(4), p. 1885,

> "Collective bargaining" means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable

times, to confer and negotiate in good faith, and to execute a written agreement *with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer,* except that by such obligation neither party shall be compelled to agree to a proposal or be reguired to make a concession unless otherwise provided in this [act] [chapter].

(Italics ours.) RCW 41.56.030(4). Unlike the broad statements of collective bargaining rights contained in various other statutes, *e.g.,* RCW 41.59.020(2); RCW 47.64.030; RCW 54.04.170, the Public Employees' Collective Bargaining Act is unique in that the personnel matters to be negotiated upon are those "which may be peculiar to an appropriate bargaining unit". RCW 41.56.030(4). Reading this language in its ordinary sense, *see Pope & Talbot, Inc. v. Department of Revenue,* 90 Wn.2d 191, 580 P.2d 262 (1978), and giving effect to the rule that all statutory language should be given effect if possible, *e.g., Gross v. Lynnwood,* 90 Wn.2d 395, 583 P.2d 1197 (1978), we conclude that the legislature intended to allow "public employers" freedom from collectively bargaining on those personnel matters that might commonly apply to all employees or are not peculiar to a bargaining unit. In this manner, the legislature avoided the possibility of, for instance, 22 or more collectively bargained personnel systems in existence in the City of Seattle.

Supportive of our view of the legislature's intent is the legislative history of the Public Employees' Collective Bargaining Act. When Senate Bill No. 360, 39th Legislature (1965), the predecessor bill to the 1967 act, passed the House and Senate in 1965, it required collective bargaining "respecting the wages, hours, terms and conditions of employment . . ." by public employers, including agencies of the State. The Governor, acting in a legislative capacity, *Washington Ass'n of Apartment Ass'ns, Inc. v. Evans,* 88 Wn.2d 563, 565, 564 P.2d 788 (1977), expressed concern in

his veto message that the bill would conflict with existing state and local merit systems:

> But it is the effect of Senate Bill No. 360 upon this merit system, and the merit systems established at countless local units of government, which concerns me most. . . .
>
> . . . Merit system laws and rules often provide methods for resolving disputes through personnel boards or civil service commissions. Without the limitations contained in the laws of other states, Senate Bill No. 360 would undermine these procedures and ultimately the entire civil service system.
>
> Section 15 of the state merit system initiative also limits the scope of bargaining to matters "which may be peculiar to an agency." This recognizes that many of the terms and conditions of public employment are fixed by the legislature and therefore cannot be bargained away. Senate Bill No. 360 without such restrictions conflicts with the merit system and derogates from the duties conferred by the people upon their elected representatives.

Senate Journal, 39th Legislature (1965), at 1128. Similar concerns have been expressed in other states respecting conciliating the potential conflicts between collective bargaining and merit systems in the public sector. R. Vaughn, *Civil Service Law* § 9.3[6] (1976).

The initiative referred to in the Governor's veto message is Initiative 207, which was passed by the voters of this state in 1960 and became the State Civil Service Law, RCW 41.06. The law's purpose, which is somewhat similar to the purpose of charter amendment No. 5, is

> to establish for the state a system of personnel administration based on merit principles and scientific methods governing the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plan, removal, discipline and welfare of its civil employees, and other incidents of state employment.

Former RCW 41.06.010. Section 15 of the initiative, which was referred to by the Governor, enacted as Laws of 1961, ch. 1, § 15, p. 16, and originally codified at RCW 41.06.150, provided in part that the State Personnel Board

shall adopt and promulgate rules and regulations, . . . regarding the basis for, and procedures to be followed for, . . . agreements between agencies and employee organizations providing for grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an agency; . . .

When the legislature passed the Public Employees' Collective Bargaining Act at its next session in 1967, section 13 of that act amended section 15 of the civil service law by removing the language regarding agreements between agencies and employee organizations. Laws of 1967, 1st Ex. Sess., ch. 108, § 13, p. 1889 (codified at RCW 41.06.150). In its stead, the legislature provided that the board shall promulgate rules and regulations regarding the basis and procedures to be followed for

[a]greements between agencies and certified exclusive bargaining representatives providing for grievance procedures and collective negotiations on all personnel matters over which the appointing authority of the appropriate bargaining unit of such agency may lawfully exercise discretion;

RCW 41.06.150(12). In addition, the legislature redefined collective bargaining to its present meaning, limited the application of the Public Employees' Collective Bargaining Act to county and municipal corporations and certain political subdivisions of the state, and provided that public employers need not collectively bargain as to any matter that the public employer has delegated by ordinance, resolution or charter to any commission or board similar in scope, structure and authority to the personnel board created by RCW 41.06. RCW 41.56.020; RCW 41.56.030(4); RCW 41.56.100.[1]

---

[1] In 1969, the legislature added a provision to the civil service law applying the provisions of the collective bargaining act respecting unfair labor practices, RCW 41.56.140–.190, to state civil service employees. RCW 41.06.340. The effect of RCW 41.06.340 is discussed in *Ortblad v. State*, 85 Wn.2d 109, 530 P.2d 635 (1975).

The apparent purpose of the legislature's 1967 changes was to answer the concerns expressed in the Governor's veto message. Insofar as collective bargaining at the local level is concerned, the legislature's definition of collective bargaining honors the legislative integrity of local governmental units by leaving them considerable latitude to develop and implement merit systems to the extent that they are not inconsistent with the right of collective bargaining on personnel matters "which may be peculiar to an appropriate bargaining unit." The legislature's definition expresses a policy that certain incidents of public employment should be subject to the give and take of the bargaining table where peculiar needs of particular employees may be better articulated and responded to, while other personnel matters involving employees as a class may fairly be left to the traditional system of personnel administration. The legislature has thus charted a middle course in the debate concerning the differences between and appropriateness of collective bargaining in the public, as opposed to the private, sector, *see generally* R. Vaughn, *Civil Service Law* § 9.3[2], [3] and [5] (1976), and it has adopted one of several possible approaches to resolving the closely related problem of avoiding the possible conflicts between collective bargaining and the merit principle and merit systems, Vaughn, *supra* § 9.3[6]. This is also accomplished by RCW 41.56-.100. It is with this in mind that we turn our attention to charter amendment No. 5.

██ Rules of statutory construction will be used in determining the charter's meaning. *Winkenwerder v. Yakima,* 52 Wn.2d 617, 632, 328 P.2d 873 (1958). Our primary function is to give effect to the underlying intent of the law, *Gross v. Lynnwood, supra,* deducing it from the charter's language if possible. *In re Estate of Lyons,* 83 Wn.2d 105, 515 P.2d 1293 (1973). If a charter is fairly susceptible of two or more reasonable interpretations, one of which will render it constitutional, that interpretation consistent with the charter's constitutionality will be adopted. *State ex rel. Morgan v. Kinnear,* 80 Wn.2d 400, 402, 494

P.2d 1362 (1972); *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971).

Sections 1, 6 and 9 of the charter amendment specifically recognize the right of collective bargaining. Facially at odds with this recognition, however, are that part of section 9 precluding ratification of any contract inconsistent with the charter and the charter amendment's requirement of uniform procedures on personnel matters. As recognized by the City, many of the personnel matters explicitly mentioned in section 1 may be encompassed within the term "working conditions," even though only "procedures" are involved. *See Fibreboard Paper Prods. Corp. v. NLRB,* 379 U.S. 203, 221–24, 13 L. Ed. 2d 233, 85 S. Ct. 398, 6 A.L.R.3d 1130 (1964) (Stewart, J., concurring); Vaughn, *supra* at § 9.3[6]; Annot., 12 A.L.R.2d 265 (1950). The charter is ambiguous with respect to the parameters of the recognition afforded collective bargaining.

We read the charter amendment's recognition of the right of collective bargaining and its requirement of the establishment of uniform procedures on personnel matters to mean that the required uniform procedures shall be established but shall apply to employees represented by a bargaining representative only to the extent that the uniform procedures do not involve personnel matters that are appropriate subjects of collective bargaining, *i.e.,* personnel matters that "may be peculiar to an appropriate bargaining unit" of the City, RCW 41.56.030(4). Employees not so represented would be subject to the entire range of uniform procedures. This reading respects the charter amendment's purpose to provide for a uniform personnel system administered according to principles of merit and nondiscrimination and the charter amendment's recognition of the right to collectively bargain. Section 9 thus precludes ratification of a collectively negotiated contract that contains provisions pertaining to personnel matters that are not mandatory subjects of "collective bargaining." The same construction applies to the 1978 personnel ordinance.

The second issue raised by the defendants is whether the 1978 City of Seattle Personnel Ordinance unconstitutionally delegates to the personnel director legislative authority over matters that section 1 of charter amendment No. 5 directs be established by ordinance. The defendants argue that the trial court's conclusion that the council's delegation is legal is erroneous because the charter requires the establishment of uniform personnel procedures solely through the adoption of an ordinance, a legislative function that cannot be delegated to the director of personnel, citing, *e.g., State ex rel. West v. Seattle,* 50 Wn.2d 94, 309 P.2d 751 (1957); *Roehl v. PUD 1,* 43 Wn.2d 214, 261 P.2d 92 (1953). The City concedes that a delegation is involved but argues that it is permissible, citing *Lindsay v. Seattle,* 86 Wn.2d 698, 548 P.2d 320, *cert. denied,* 429 U.S. 886, 50 L. Ed. 2d 167, 97 S. Ct. 237 (1976). We disagree with both arguments.

In general, the 1978 City of Seattle Personnel Ordinance establishes a personnel department to be headed by a director of personnel and sets forth the rights of employees. These rights include (a) the right to collectively bargain, (b) to compete openly for positions on the basis of merit, and (c) to not be subject to disciplinary action except for cause. The ordinance requires that affirmative action be undertaken to ensure equal employment opportunities for minorities and women, specifies what efforts shall be undertaken to ensure equal employment opportunities, and requires the mayor to develop and implement an affirmative action plan subject to the council's approval. It also encourages affirmative action for persons with handicaps, recognizes the right of and sets forth the procedures for collective bargaining under RCW 41.56, requires classification of positions by similarity, acknowledges veterans' preferences only to the extent required by state and federal law, and requires and sets forth examination and selection procedures on the basis of merit. The ordinance sets forth certain steps to be followed in the operation of a performance evaluation system, requires and states the goals of

annual training plans, allows for apprenticeship programs, specifies the order of layoff for employees, sets forth a non-exclusive list of grounds for discipline or termination of an employee, and lists disciplinary actions for inappropriate employee behavior or performance. The ordinance establishes a 3–member civil service commission and sets forth its duties, including hearing appeals involving administration of the personnel system, reviewing rules promulgated by the personnel director pursuant to the City's administrative code, and issuing appropriate remedial orders, and grants aggrieved employees the right of appeal to the civil service commission, provided the complaint is not subject to binding arbitration pursuant to a collective bargaining agreement.

In addition, the personnel ordinance vests in the director of personnel the legislative and administrative responsibility for developing many of the uniform procedures on personnel matters required by section 1 of charter amendment No. 5. Among the director's duties are the following:

3. Act as the city's central agency for establishing standards for personnel practices which are uniform as is practicable from department to department;

. . .

5. Develop and administer a system of classification of positions of employment in the city, and a wage and salary plan therefor;

6. Develop and administer centralized employee relations functions, relating to standard grievance procedures, collective bargaining, employee morale and motivation, and employee discipline and termination;

7. Develop and implement employee safety programs in addition to those which may be provided within departments, and develop safety programs in coordination with departments;

8. Develop, monitor, and/or approve departmental training plans.

9. Develop and administer a centralized system and regular procedures for recruitment and selection of city employees;

. . .

11. Develop and administer a regular system of performance evaluation of city employees;

12. Develop and administer benefit programs, other than retirement benefits administered by the Employee's Retirement Board, for city employees;

Seattle Municipal Code 4.04.040 (ordinance No. 107790, § 4), (3), (5)–(9), (11)–(12). The director is also required to "establish rules for the presentation of employee grievances" and "establish examination procedures by rule." Seattle Municipal Code 4.04.240(A), 4.04.150(A) (ordinance No. 107790, §§ 22(A), 13(A)). Rule–making authority pursuant to the City's administrative code, Seattle Municipal Code 3.02 (ordinance No. 102228), is lodged in the director of personnel for the purposes delineated in the personnel ordinance. Seattle Municipal Code 4.04.050 (ordinance No. 107790, § 5).

In approaching an issue concerning a municipal delegation of legislative authority and the construction of a municipality's charter, it is imperative to understand the purposes of municipal corporations and their classification by source of authority. Originally created in this country by special legislative acts, municipal corporations are now generally classified by three primary methods of creation: (1) by special legislative act; (2) pursuant to the provisions of general law authorizing incorporation; and (3) under constitutional home rule provisions. 1 E. McQuillin, *Municipal Corporations* §§ 2.07, 3.17, 3.18 (3d ed. 1971); 2 E. McQuillin, *Municipal Corporations* § 9.17 (3d ed. 1979). The latter concept developed in the late 1800's in response to state legislatures' interference in municipal affairs on the basis of patronage and party spoils, a practice indirectly allowed by the courts' construction of charters created by special legislation as subjecting municipal corporations completely to the will of the state legislatures. 1 E. McQuillin, *supra* at §§ 1.40, 3.18; 2 E. McQuillin, *supra* at § 9.08. The primary purpose of providing for home rule charters here and in other states has been stated to be to permit local communities complete powers over matters

peculiarly local or municipal in concern so that they might operate economically and efficiently. *Bussell v. Gill,* 58 Wash. 468, 473, 108 P. 1080 (1910); *Hilzinger v. Gillman,* 56 Wash. 228, 234, 105 P. 471 (1909).

Constitutional home rule provisions basically allow the legislature to enact statutes permitting municipalities to govern themselves, grant municipalities the power to adopt charters if enabling legislation exists, or authorize municipalities to adopt charters even in the absence of enabling legislation. Trautman, *Legislative Control of Municipal Corporations in Washington,* 38 Wash. L. Rev. 743, 765 (1963). In theory at least, the latter type of home rule municipalities owe their power of local self–government to the state constitution. 1 E. McQuillin, *supra* at § 1.41; 2 E. McQuillin, *supra* at § 9.02. In contrast, legislative charter cities are essentially created by a delegation of the legislature's powers and, accordingly, regarded as creatures of the state and subject to its complete control. 1 E. McQuillin, *supra* at §§ 1.42, 3.02, 3.17; 2 E. McQuillin, *supra* at § 9.02.

In Washington, the legislature may not create municipal corporations by special laws but shall provide for their creation by general law. Const. art. 11, § 10 (amendment 40). The constitution grants any city containing a population of 10,000 or more inhabitants the inviolate right to frame a charter for its own government "consistent with and subject to the Constitution and laws of this state". Const. art. 11, § 10 (amendment 40); *see State ex rel. Billington v. Sinclair,* 28 Wn.2d 575, 583, 183 P.2d 813 (1947). Seattle did so on March 12, 1946. Once framed, the charter becomes the "organic law" of the municipality, Const. art. 11, § 10 (amendment 40), subject to the qualification that "when the interest of the State is paramount to or joint with that of the municipal corporation, the municipal corporation has no power to act absent a delegation from the legislature." *Massie v. Brown,* 84 Wn.2d 490, 492, 527 P.2d 476 (1974); *accord, Issaquah v. Teleprompter Corp.,* 93 Wn.2d 567, 572–73, 611 P.2d 741 (1980).

The constitution further provides that "[a]ny county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Const. art. 11, § 11. As stated in *Detamore v. Hindley,* 83 Wash. 322, 326–27, 145 P. 462 (1915):

> This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject–matter is local, and the regulation reasonable and consistent with the general laws.

*Accord, Lenci v. Seattle,* 63 Wn.2d 664, 667, 388 P.2d 926 (1964); *Martin v. Tollefson,* 24 Wn.2d 211, 163 P.2d 594 (1945). *Contra, State ex rel. Fawcett v. Superior Court,* 14 Wash. 604, 606, 45 P. 23 (1896). *See generally* Trautman, *supra* at 772–75.

The rule in this state and others is that where the legislature by enabling legislation indicates the legislative body authorized to perform a legislative function, that body may not delegate its power absent specific legislative authorization. *Lutz v. Longview,* 83 Wn.2d 566, 570, 520 P.2d 1374 (1974); *Noe v. Edmonds School Dist. 15,* 83 Wn.2d 97, 515 P.2d 977 (1973); *In re Puget Sound Pilots Ass'n,* 63 Wn.2d 142, 145–46 & n.3, 385 P.2d 711 (1963); *Roehl v. PUD 1,* 43 Wn.2d 214, 240, 261 P.2d 92 (1953); *Neils v. Seattle,* 185 Wash. 269, 53 P.2d 848 (1936); *Benton v. Seattle Elec. Co.,* 50 Wash. 156, 96 P. 1033 (1908); 2 E. McQuillin, *supra* at § 10.40. The rationale underlying this rule is that enabling legislation is a grant rather than a limitation of authority, which means that only those powers enumerated in the statute may be exercised by the agency or municipality. *See generally Moses Lake School Dist. 161 v. Big Bend Community College,* 81 Wn.2d 551, 556, 503 P.2d 86 (1972), *appeal dismissed,* 412 U.S. 934, 37 L. Ed. 2d 393, 93 S. Ct. 2776 (1973); *Union High School Dist. 1 v. Taxpayers,* 26 Wn.2d 1, 6–7, 172 P.2d 591 (1946). Given the original delegation by the legislature, what is involved in these cases is a prohibited subdelegation of legislative authority.

The prohibition against delegation has been stated in several Washington cases involving charter provisions. These cases must be read in light of their facts and the requirement of RCW 35.22.020 that "the manner and mode in which cities of the first class shall exercise the powers . . . conferred upon them by law . . . shall be as provided in the charters thereof." *State ex rel. West v. Seattle*, 61 Wn.2d 658, 379 P.2d 925 (1963), and *State ex rel. West v. Seattle*, 50 Wn.2d 94, 309 P.2d 751 (1957), had construed article 16, section 12 of Seattle's city charter, which stated:

> "Any officer or employee whose appointment is complete *may be removed by the appointing power only* upon the filing with the commission of a statement in writing of the reasons therefor. . . ." (Italics ours.)

*State ex rel. West v. Seattle*, 61 Wn.2d at 667. Both cases held that only the appointing power had the authority to discharge a civil service employee by the exercise of personal judgment, and any attempted delegation of that power to another officer or employee was void notwithstanding the appointing power's subsequent approval and acquiescence in the removal. Similarly, *State v. Scott*, 115 Wash. 124, 196 P. 576 (1921), held that under a charter provision and state statute empowering the Tacoma City Council to grant licenses and fix the fees therefor the city council had no right to delegate by ordinance its authority to the commissioner of public safety. Relying on *State v. Scott, supra, State ex rel. Mattice v. Seattle*, 173 Wash. 42, 46, 21 P.2d 288 (1933), held that the Seattle City Council could not delegate its power under charter article 4, section 18, subsection 40, to create positions in the classified civil service "*by ordinance and not otherwise.*" These cases involved either a statute or precise language of limitation.

In this state, the nondelegation doctrine has evolved at the state level of government to the point where

> the delegation of legislative power is justified and constitutional, and the requirements of the standards doctrine are satisfied, when it can be shown (1) that the legislature has provided standards or guidelines which define in

general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that *procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power.*

(Italics in original.) *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 159, 500 P.2d 540 (1972), *appeal dismissed,* 410 U.S. 977, 36 L. Ed. 2d 173, 93 S. Ct. 1503 (1973); *accord, In re Powell,* 92 Wn.2d 882, 602 P.2d 711 (1979); *State v. Crown Zellerbach Corp.,* 92 Wn.2d 894, 602 P.2d 1172 (1979). The principal reason underlying this approach to the doctrine of delegation is the recognition that the prior requirement of explicit legislative standards[2] "impedes efficient government and conflicts with the public interest in administrative efficiency in a complex modern society." *Barry & Barry, Inc. v. Department of Motor Vehicles, supra* at 159.

In *Lindsay v. Seattle,* 86 Wn.2d 698, 548 P.2d 320, *cert. denied,* 429 U.S. 886, 50 L. Ed. 2d 167, 97 S. Ct. 237 (1976), the plaintiff contended that Seattle's civil service commission lacked the authority to delegate to its secretary the discretionary power vested in it by prior charter article 16, section 9 to certify eligible candidates to a department head for possible employment by the City. The opinion rejected this contention solely by stating that *Barry & Barry, Inc. v. Department of Motor Vehicles, supra* at 159, holds delegations of legislative power to be justified when the delegation meets the two criteria set forth therein. *Lindsay v. Seattle, supra* at 709. Implicit in *Lindsay* is a recognition that the increasing complexity of governmental activity burdens the capacity of legislative bodies at both the state and municipal levels of government.

---

[2]*See Clark v. Dwyer,* 56 Wn.2d 425, 353 P.2d 941 (1960), *cert. denied,* 364 U.S. 932, 5 L. Ed. 2d 365, 81 S. Ct. 379 (1961); *Senior Citizens League, Inc. v. Department of Social Security,* 38 Wn.2d 142, 152–53, 228 P.2d 478 (1951); *State ex rel. Washington Toll Bridge Auth. v. Yelle,* 195 Wash. 636, 643, 82 P.2d 120 (1938); *Carstens v. DeSellem,* 82 Wash. 643, 650, 144 P. 934 (1914); 1 K. Davis, *Administrative Law* § 2.07 (1958).

*Lindsay v. Seattle, supra,* may not be relied upon as authority for the City's argument that a municipality's legislative body may delegate its legislative authority when the pertinent charter provision requires the passage of an ordinance. Legislative authority initially and nonexclusively vested by a charter provision in a body or person differs considerably from a grant of legislative authority in a charter provision that provides for the mode and manner of its exercise by specifically requiring the passage of an ordinance. "Ordinance" is a precise term that excludes other legislative procedures such as the passage of a motion or resolution. *Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle,* 70 Wn.2d 222, 227–28, 422 P.2d 799 (1967). The power to pass an ordinance in Seattle is exclusively vested in the mayor and city council and the people of the city of Seattle by article 4, section 1, subsection A of the city charter. The charter, as the organic law of the City, may not be changed or limited by an ordinance. *Platt Elec. Supply, Inc. v. Seattle,* 16 Wn. App. 265, 272, 555 P.2d 421 (1976). Hence, "[w]here the charter requires the passage of an ordinance—a legislative act—by the council, to accomplish the object desired, an ordinance is indispensable; the power cannot be delegated to others." 5 E. McQuillin, *Municipal Corporations* § 15.03 (3d ed. 1969); *accord,* 1 C. Antieau, *Municipal Government Law* § 4.39 (1980).

In order to consider the parties' respective arguments, we have assumed with the parties that the charter amendment provides only that legislative policy respecting personnel matters shall be expressed by ordinance. We do not agree that the assumption is correct.

█ Section 1 of charter amendment No. 5 requires that the ordinance establishing the city personnel system

shall *establish* uniform *procedures for recruitment, selection, development, and maintenance* of an effective and responsible work force, *including* but not limited to, job advertising, training, job classification, examinations, appointments, transfers within the system, career development, salary administration, labor negotiations, safety,

employee benefits, grievance procedures, discipline, discharge, layoff and recall, regulation of political activity, and other personnel matters.

(Italics ours.) The language of this section must be accorded its usual and ordinary meaning. *See generally Pacific First Fed. Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 598 P.2d 387 (1979). Given the complex diversity and number of personnel matters, it is reasonable to assume the electors intended that of its several meanings "establish" should mean that the ordinance shall bring into being uniform procedures by requirement, rather than fix them unalterably. Black's Law Dictionary 642–43 (4th ed. 1968); *Webster's Third New International Dictionary* 778 (1969). "Procedures" are a "particular way of doing or of going about the accomplishment of something". *Webster's Third New International Dictionary, supra* at 1807. By its use of the word "including," section 1 indicates that "procedures for recruitment, selection, development, and maintenance" broadly encompass personnel matters. In essence, then, section 1 requires the ordinance to found or bring into being personnel procedures and whatever else is necessary to accomplish the "recruitment, selection, development, and maintenance of an effective and responsible work force".

Section 4 of the charter amendment provides:

MERIT PRINCIPLES: The personnel ordinance shall provide that the civil service *shall be administered* in accordance with the following merit principles:

Recruitment, selection, transfer and advancement of employees on the basis of their relative ability, knowledge, and skills, without regard for political beliefs or activity. The recruitment and selection process shall include job advertising and open consideration of qualified applicants for initial appointment;

Creation of opportunities for entry into the system at all levels;

Creation of opportunities for entry into and advancement in the system by members of underrepresented groups;

> Limitation of periods of probationary status to one year and examination of all employees within one year of employment;
> Training of employees to assure high quality performance and to encourage advancement;
> Retention of employees on the basis of the adequacy of their performance, correction of inadequate performance, and separation of employees whose inadequate performance is not corrected;
> Assurance of fair treatment of applicants and employees with proper regard for their privacy and constitutional rights as citizens;
> Assurance that employees are protected from coercions or importuning for political purposes and are prohibited from using their official authority for the purpose of interfering with or affecting the result of any election or nomination for office.

(Italics ours.) This section also deals with the recruitment, selection, development and maintenance of the City's work force. The merit principles listed in the section are the heart of the charter amendment. Section 4 contemplates that the director of personnel will exercise extensive managerial authority, including the necessary authority to make rules, by listing the merit principles in terms of actions to be undertaken and policies to be implemented. This accords with the traditional usage and arrangement that personnel policy and management is essentially an administrative or executive function. *See generally Gogerty v. Department of Institutions,* 71 Wn.2d 1, 5, 426 P.2d 476 (1967).

We must seek, in construing sections 1 and 4 together, to ascertain, harmonize and effectuate the intent of the charter's framers and the people who adopted it. *State ex rel. Billington v. Sinclair,* 28 Wn.2d 575, 183 P.2d 813 (1947); *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977).

As presented to the electorate of the city of Seattle, the primary purpose and effect of charter amendment No. 5 was stated to be to replace the charter's existing "morass" of complex and detailed provisions on civil service with

fewer and more flexible provisions that would produce the principal change of placing emphasis on merit rather than seniority in the employment and promotion of city employees. Municipal League of Seattle and King County, Municipal News, Nov. 8, 1977, at 454–55; Seattle Post–Intelligencer, Nov. 7, 1977, § C, at 11; *id.*, Nov. 6, 1977, § B, at 2; *id.*, Oct. 20, 1977, § B, at 4; *id.*, Oct. 19, 1977, § A, at 12; *id.*, Sept. 14, 1977, § D, at 9; Seattle Times, Oct. 30, 1977, § A, at 24, 26; *id.*, Sept. 13, 1977, § A, at 14; *id.*, Sept. 9, 1977, § B, at 2. In addition, some reports mentioned that the personnel director would assume the existing civil service commission's administrative functions, which included rule–making authority as to personnel matters. Seattle Post–Intelligencer, Nov. 6, 1977, § B, at 2; Seattle Times, Sept. 13, 1977, § A, at 14; *id.*, Sept. 9, 1977, § B, at 2. An ad by the opponents of the amendment represented only that the proposed charter would require personnel regulations to be established by politicians by ordinance. Seattle Times, Nov. 5, 1977, § A, at 4. Finally, while one commentary stated that administrative details would be determined by the mayor and city council, Municipal News, *supra* at 454–55, another maintained that administrative duties would devolve upon the personnel director and hiring practices would be set up by the mayor and city council, Seattle Sun, Nov. 2, 1977, p. 15. Insofar as might be gathered from these written sources, the electorate intended to replace the prior system with a more flexible personnel system based on principles of merit.

Guided by the purpose of the charter amendment to establish a different and more flexible merit system, recognizing the amendment's comprehensive and complex subject matter, and relying primarily upon its language, we find that the 1978 City of Seattle Personnel Ordinance accords with the language and intent of the charter amendment insofar as it relates to the director's rule–making powers. We construe the amendment to establish the mayor's and city council's primary function as framing the general operational structure of the personnel system by

ordinance. Beyond this, the ordinance required by section 1 must accomplish the following:

1. It must require that those personnel matters listed in section 1 and those not listed but necessary to accomplish an effective and responsible work force shall be implemented and, if necessary, further developed by the director of personnel.

2. It must require the director to follow and/or put into operation any other policies and practices set forth in the ordinance and deemed necessary to accomplish an effective and responsible work force. These may but need not relate to the personnel matters dealt with in No. 1 above.

3. It must provide that in implementing and effectuating the ordinance's directives contained in Nos. 1 and 2 above, the director of personnel shall be guided by and ensure the attainment of the merit principles listed in section 4 of the charter amendment. The director shall take no action, required by the ordinance or not, violative of the charter's merit principles.

The ordinance achieves these objectives. We hold that the vesting of rule–making authority in the director of personnel by the 1978 City of Seattle Personnel Ordinance comports with charter amendment No. 5.

The third issue raised by the defendants is whether the 1978 City of Seattle Personnel Ordinance is invalid because it was not passed within the time limit set for its passage by charter amendment No. 5. The defendants argue that the date set forth in the charter amendment is mandatory and that rules of construction for statutes as to the meaning of "shall" do not apply to charters, citing *Savage v. Tacoma*, 61 Wash. 1, 112 P. 78 (1910).

*Savage v. Tacoma, supra* at 3, held that the passage of an ordinance after its introduction and three readings during one council session could not stand because it violated a charter section requiring that no ordinance "shall be passed before the second regular meeting of the city council after its introduction, nor until read in full at two regular meetings of the council . . ." The charter provision was

intended to ensure caution, deliberation, and an understanding of the expenditures authorized in the ordinances. *Savage v. Tacoma, supra* at 5. Although *Savage* states that a charter section prescribing a definite method for the enactment of an ordinance must be followed, *Savage v. Tacoma, supra* at 6, no purpose will be served by extending that rule to the prescribed date of enactment involved here.

■ The judicial determination whether the word "shall" is mandatory or directory has been applied in a case involving a constitutional provision. *State ex rel. Billington v. Sinclair*, 28 Wn.2d 575, 580, 183 P.2d 813 (1947). It is appropriate to apply the same analysis to a charter which also constitutes organic law. The word "shall" is usually construed to be mandatory in a constitutional or charter provision, but the analysis followed in cases construing statutes generally applies to charters. *See State ex rel. Billington v. Sinclair, supra* at 580. In such cases,

> the prime object is to ascertain the legislative intent as disclosed by all the terms and provisions of the act in relation to the subject of legislation, and by a consideration of the nature of the act, the general object to be accomplished, and the consequences that would result from construing the particular statute in one way or another.

*Spokane County ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 169, 97 P.2d 628 (1940); *Accord, State v. Huntzinger*, 92 Wn.2d 128, 133, 594 P.2d 917 (1979); *State v. McDonald*, 89 Wn.2d 256, 262–63, 571 P.2d 930 (1977).

Charter amendment No. 5 states that the ordinance required under section 1 "shall be enacted by November 8, 1978." To read this language as mandatory rather than directory would frustrate the remedial purpose of the charter amendment and result in the invalidity of the city personnel ordinance. The electors could not have intended these consequences to result from the short delay involved here. We uphold the trial court's conclusion that the November 8 date is directory rather than mandatory.

■ One of the defendants contends that section 25(D) of the personnel ordinance violates the purpose and intent of the Public Employees' Collective Bargaining Act to require open competition for all public employment. Section 25(D) provides that provisional employees become probationary employees on the effective date of the ordinance without loss of accrued benefits. We will not consider this contention absent support by argument or citation of authority. *E.g., State v. Wood,* 89 Wn.2d 97, 99, 569 P.2d 1148 (1977).

The judgment is affirmed.

ANDERSEN, J., concurs.

DORE, J. (dissenting)—I dissent for I believe that the Seattle City Charter amendment No. 5 is irreconcilably conflicting with governing state law and therefore is unconstitutional and void pursuant to Const. art. 11, § 10 (amendment 40). I would also hold that the City of Seattle Personnel Ordinance, adopted pursuant to city charter amendment No. 5, is in direct conflict with state law and is also unconstitutional.

In *State ex rel. Guthrie v. Richland,* 80 Wn.2d 382, 494 P.2d 990 (1972), our Supreme Court stated at page 384:

It is settled that any charter provision which has the effect of limiting or restricting a legislative grant of power to the legislative authority or other officer of a city is invalid. *Neils v. Seattle,* 185 Wash. 269, 53 P.2d 848 (1936).

As we said in *Dahl v. Braman,* 71 Wn.2d 720, 430 P.2d 951 (1967), the principles established by that case and the cases cited therein are that, where there is a conflict between a general law enacted by the legislature and a freehold charter provision, the general law is superior to and supersedes the charter provision; and where the general law grants authority to the legislative authority of a city, that authority may not be exercised by the city as a corporate entity, nor is the exercise of that authority by the legislative authority subject to repeal, amendment or modification by the people through the intiative [*sic*] or

referendum procedure. *Accord, State ex rel. Haas v. Pomeroy, supra.*

The constitution of this state, article 11, section 10, amendment 40, dictates this result. It provides that all charters of municipal corporations shall be subject to, and controlled by, general laws.

The Public Employees' Collective Bargaining Act (RCW 41.56) requires the City, as the employer and exclusive bargaining representative representing employees, to bargain on all personnel matters and recognize that each bargaining unit may have requirements and interests peculiar to that unit only.

The analysis of the conflict of the city charter amendment and state law (RCW 41.56) begins with the proposition that where there is such a conflict, general state law governs. Const. art. 11, § 10 (amendment 40). RCW 41.56 is such a law and in the event of conflict with any city charter provision, the provisions of RCW 41.56 must control. The conflict exists between city charter amendment No. 5 and RCW 41.56 in that each of those laws requires the City to pursue a course of action that is in conflict with the other law. RCW 41.56 requires the City to bargain collectively on personnel matters including wages, hours and working conditions. Collective bargaining is defined in RCW 41.56-.030(4) and includes the duty to meet, confer and negotiate in good faith and to execute a written agreement concerning collective negotiations on personnel matters including wages, hours and working conditions which may be peculiar to an appropriate bargaining unit. State law provides that neither party shall be compelled to agree to a proposal or be required to make a concession unless so provided in RCW 41.56. In this manner the Public Employees' Collective Bargaining Act sets the basic requirement that the City, as employer and exclusive bargaining representative representing employees, bargain on all personnel matters recognizing that each bargaining unit may have peculiar requirements and giving to each bargaining unit the right

to reach its own agreement with the City on personnel matters.

In direct conflict with this principle of collective bargaining, city charter amendment No. 5 requires that a personnel ordinance establish *uniform procedures* on such working conditions.

City charter and state law are in direct and irreconcilable conflict on this issue. Under the provisions of our constitution, as set forth in *State ex rel. Guthrie v. Richland, supra,* state law (RCW 41.56) must be declared to be controlling and city charter amendment No. 5 consequently must be held to be invalid.

In determining whether this court should declare the entire city charter amendment invalid, rather than declaring a portion such as sections 1 and 9 invalid, we must determine whether the charter amendment would have been enacted without the invalid provisions, or whether the elimination of the invalid part renders the remainder of the act incapable of accomplishing the legislative purpose. *Homes Unlimited, Inc. v. Seattle,* 17 Wn. App. 47, 561 P.2d 1089 (1977), *modified,* 90 Wn.2d 154, 579 P.2d 1331 (1978). The first test focuses upon legislative intent; the second test deals with the purpose to be served by the legislation.

The first test applies whether or not a severability clause is contained in the legislation. *Homes Unlimited, Inc. v. Seattle, supra.*

The city charter amendment was presented to the city council and the people of Seattle as providing for *uniformity,* one system which would be applicable to all city employees. Clearly this was not accomplished because the City must still negotiate with each bargaining unit and reach agreement as provided in state law. Without accomplishing this purpose, the city charter amendment and personnel ordinance do not have features of economy and simplicity that were believed to be their primary characteristics. It is also noted that the city charter amendment does not contain within it a severability clause. Without the

*uniform personnel procedures* provided in section 1 of the charter amendment, the entire purpose of the charter amendment is defeated. Since the *uniform procedures* provision is directly in conflict with state law, it cannot stand. Therefore I would have held that the entire charter amendment is unconstitutional and void under Const. art. 11, § 10 (amendment 40).

*The Seattle City Personnel Ordinance adopted pursuant to city charter amendment No. 5 is also in direct conflict with state law and is unconstitutional.*

Section 25(B) of the personnel ordinance provides for provisional employees becoming probationary employees of the City without open competition. This is violative of the purpose and intent of RCW 41.56 which requires open competition for all public employment.

The civil service commission established under the personnel ordinance is not and cannot be similar in scope, structure and authority to the State Personnel Board. Thus the City retains all of the responsibility under state law to engage in collective bargaining on all personnel matters and cannot avoid that responsibility by delegating such matters to the city civil service commission. Section 4 of the personnel ordinance provides that the director of personnel, an appointee of the employer, is to adopt substantive rules concerning many personnel matters, including grievance procedures, layoffs, hiring, performance evaluation, promotion opportunities and classification changes. All of these matters are within the mandatory bargaining requirements of RCW 41.56. The personnel ordinance itself is in direct conflict with the requirements of state law in the same manner as charter amendment No. 5 conflicts with state law. The ordinance, adopted pursuant to charter amendment No. 5, must be consistent with charter amendment No. 5. To be consistent with charter amendment No. 5 necessarily provides that it is not consistent with general state law and therefore is also invalid.

I conclude that Seattle City Charter amendment No. 5 and the 1979 City of Seattle Personnel Ordinance are invalid. I would have reversed the declaratory judgment of the King County Superior Court and remanded the case with instructions to enter an order declaring City of Seattle Charter amendment No. 5 and its implementing ordinance null and void.

Reconsideration denied December 30, 1980.

Review denied by Supreme Court March 13, 1981.